Complaint of AMERICAN EXPORT LINES, INC., formerly known as American Export Isbrandtsen Lines, Inc., as owner of the S.S. C.V. SEA WITCH, seeking exoneration from or limitation of liability.

No. 73 Civ. 2507 (CHT).

United States District Court,
S. D. New York.

Jan. 25, 1977.

Haight, Gardner, Poor & Havens, New York City, for plaintiff American Export Lines, Inc.; James M. Estabrook, Chester D. Hooper, New York City, of counsel.

Bigham Englar Jones & Houston, Abraham E. Freedman, New York City, for certain claimants; Douglas A. Jacobsen, Francis M. O'Regan, Arnold J. Wolf, New York City, of counsel.

Rolnick, Tabak, Ezratty & Huttner, New York City, for claimants Jessie Lovsin and Juan Cintron; Jack Steinman, New York City, of counsel.

Burlingham Underwood & Lord, New York City, for Bath Iron Works, Inc.; Hervey C. Allen, Kenneth H. Volk, Terry L. Stoltz, New York City, of counsel.

Kirlin, Campbell & Keating, New York City, for Esso Marine (Belgium), Esso Belgium, Standard Tankers (Bahamas) Company Ltd. and Exxon Corp.; Richard H. Brown, Jr., Steven R. Schilke, New York City, of counsel.

Vincent, Berg, Russo, Marcigliano & Zawacki, New York City, for Bond Hydraulic Equipment Service, Inc.; James F. Campise, New York City, of counsel.

Townley, Updike, Carter & Rodgers, New York City, for Sperry Rand Corp.; Philip D. Pakula, Edward E. Vassallo, Gayle A. Yeomans, New York City, of counsel.

Robert B. Fiske, Jr., U. S. Atty., S.D. N.Y., New York City, for the Government; Gilbert S. Fleischer, Terence Gargan, New York City, of counsel.

## MEMORANDUM

TENNEY, District Judge.

A pretrial ruling is requested of this Court regarding the admissibility of certain documents under the new Federal Rules of Evidence ("Rules"), particularly Rules 803(8) and 804(b)(1). The issue arises in the context of a prospective trial in the context of a prospective trial in the above-captioned civil action, the result of a maritime collision between the S.S. C.V. SEA WITCH and the S.S. ESSO BRUSSELS. The documents in question are the products of Government inquiries made in the aftermath of the disaster, namely, the complete record of proceedings and the ensuing report of the United States Coast Guard Marine Board of Investigation ("Coast Guard record and report") and the report of the National Transportation Safety Board ("NTSB report"). A pretrial finding of admissibility is urged upon the Court by cer-

tain cargo claimants. They have the support—in whole, in part, or with qualification—of the plaintiff herein and of certain other claimants. Outright rejection of all the records and reports at this time is urged by one group of claimants; other claimants demur in part only. For the reasons stated below, this Court rules that the factual findings and exhibits included in the Coast Guard record and report will be admissible at the trial of this action; decision on the admissibility of testimony contained therein is postponed at this time pending demonstration of the unavailability of the witnesses who gave that testimony. The Court finds, however, that any evaluative conclusions or opinions which would tend to fix responsibility in this action will not be admissible at trial. Finally, the entire NTSB report will be excluded at trial.

Because the record and the two reports contain several categories of evidence and because the Federal Rules of Evidence are recent legislative enactments [1] not yet having the benefit of extensive judicial interpretation, careful consideration of each category is necessary.

*Factual Findings and Conclusions*

On June 2, 1973, a collision occurred in New York harbor between the two named vessels. A serious fire ensued, resulting in extensive loss of life, personal injury, and damage to the ships and their cargoes.

Pursuant to its statutory mandate under 46 U.S.C. § 239, the United States Coast Guard convened a Marine Board of Investigation on June 5, 1975, which held a series of testimonial hearings at which most of the parties to the motion herein were represented and aided by counsel in the effort to establish the sequence of events leading to the disaster. Once the testimony of witnesses and pertinent exhibits had been received, the Board, following obligatory procedure, drew up a report of findings of fact and conclusions which it then submitted to the Commandant of the Coast Guard for review. This report, and the record it is based on, are the primary items which movants seek to qualify in toto as an exception to the hearsay exclusion under Rule 803(8).

Rule 803(8) allows the court to admit as evidence of the truth of the statements contained therein

> "[r]ecords, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth . . . (C) in civil actions and proceedings . . factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness."

As the prologue to Rule 803 states, such reports "are not excluded by the hearsay rule, even though the declarant is available as a witness." [2] Rule 803(8)(C) explicitly

---

1. The Rules became effective on July 1, 1975. *See* Act of Jan. 2, 1975, Pub.L.No. 93–595, § 1, 88 Stat. 1926.

2. It has been suggested by certain parties herein that the Coast Guard record and report also qualifies for admission under Rule 803(6), the business records exception to the hearsay rule, which likewise does not require the unavailability of the declarant. Rule 803(6) is framed in broader terms, permitting admission into evidence of

> "[a] memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compi-

lation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. . . ."

The overlap between the subject matter of the 803(6) and 803(8) exceptions has been noted. *See United States v. Smith*, 172 U.S.App.D.C. 297, 521 F.2d 957, 968–69 n. 24 (1975); *Colvin v. United States*, 479 F.2d 998, 1001–03 (9th Cir. 1973); 4 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 803(8)[03] at 803–175 (1975). However, the Supreme Court has admonished us to read statutes addressed to judicial specialists with appropriate technical discrimination, *Cheng Fan Kwok v. Immigration and Naturalization Service*, 392 U.S. 206, 212, 88 S.Ct. 1970, 20 L.Ed.2d 1037 (1968), and to interpret a statutory scheme with due respect to the whole and each of its provisions as it manifests legislative purpose. *Kokoszke v. Belford*, 417 U.S.

confines admission to "factual findings" contained in public records and reports which are the product of investigations.[3] Even that apparently unambiguous language is the subject of some controversy, however. The historical background of Rule 803 reveals a vigorous difference of opinion as to the meaning of "factual findings." The House Report states that the Committee on the Judiciary intended "that the phrase 'factual findings' be strictly construed and that evaluations or opinions contained in public reports shall not be admissible under [Rule 803(8)]." H.R.Rep.No.93–650, Note to Rule 803(8), *reprinted in* Fed.R. Evid., 28 U.S.C.A. 580 (1975). On the other hand, the Senate Committee on the Judiciary took "strong exception to this limiting understanding of the application of the rule." S.Rep.No.93–1277, Note to Rule 803(8), *reprinted in* Fed.R.Evid., 28 U.S.C.A. 581 (1975). The Advisory Committee on the Proposed Rules, in commenting on Rule 803(8), acknowledged disagreement in the previous case law on the admission of evaluative material, but listed various reports of this kind made admissible by statute to show "the willingness of Congress to recognize a substantial measure of admissibility for evaluative reports." Advisory Committee Notes to Rule 803(8), *reprinted in* Fed.

R.Evid., 28 U.S.C.A. 590 (1975). The Advisory Committee concluded that Rule 803(8) "assumes admissibility in the first instance but with ample provision for escape if sufficient negative factors are present."[4] *Id.*

In choosing between these conflicting interpretations of the crucial phrase "factual findings," the Court is guided by two considerations. First, a careful reading of Rule 803 itself would seem to indicate that the term describes something different from that denoted by the terms "opinions" and "diagnoses," which are made admissible by Rule 803(6) *when contained in the records of* "a regularly conducted business activity." Rule 803(8), which is similar in many respects to Rule 803(6), omits these terms and substitutes "factual findings." Since these different terms are used in separate but similar contexts within the same rule, the Court will assume that they have separate and distinct meanings. *Hoffman v. Joint Council of Teamsters No. 38*, 230 F.Supp. 684, 691 (N.D.Cal.1962); *see Dunlop v. Alhambra Nursery & Accredited Kindergarten, Inc.*, 409 F.Supp. 309, 311 (D.Ariz. 1976).

Second, the regulations promulgated by the Coast Guard to govern marine investigations[5] specifically state that such investi-

---

642, 650, 94 S.Ct. 2431, 41 L.Ed.2d 374 (1974). This Court, therefore, will not ascribe to Congress a willingness to add mere surplusage to the Federal Rules of Evidence in the form of Rule 803(8), even though much of the material admissible under that provision may also be subsumed under Rule 803(6). Thus, since 803(8) deals explicitly with reports based on public investigations, precisely the material at issue here, this Court will look exclusively to 803(8) in determining the admissibility of the Coast Guard report.

3. Although at common law the findings of a · Marine Board of Investigation were not admitted in civil actions, *The Charles Morgan*, 115 U.S. 69, 5 S.Ct. 1172, 29 L.Ed. 316 (1885); *Steward v. The Atlantic Refining Co.*, 240 F.2d 715 (3d Cir. 1957); *Griffin on Collision*, § 268 (1959), this prohibition did not emanate from the specific language of 46 U.S.C. § 239, the statute authorizing the investigations. Therefore, Rule 803(8) must be taken as having superseded whatever judicial constrictions were read into section 239 so far as "factual findings" are concerned, since "it has long since been decided by the supreme court that the

legislature had the power to establish new rules of evidence, in derogation of the common law." *U. S. v. Harrill*, 26 F.Cas. 169, 170 (N.D. Cal.1857).

4. *The Advisory Committee suggested four examples of such negative factors*—"(1) the timeliness of the investigation; (2) the special skill or experience of the official; (3) whether a hearing was held and the level at which conducted; (4) possible motivation problems suggested by *Palmer v. Hoffman*," Advisory Committee Notes to Rule 803(8), 28 U.S.C.A. 590 (1975) (citations omitted)—and concluded: "Others no doubt could be added." *Id.*

5. 46 U.S.C. § 239(a) directs in part:
"The Commandant of the Coast Guard shall prescribe rules and regulations for the investigation of marine casualties involving loss of life . . . .. All reports shall be made to the Commandant of the Coast Guard and such reports shall be public records and be open to inspection at reasonable times by any persons."

gations "are for the purpose of taking appropriate measures for promoting of life and property at sea, and *are not intended to fix civil or criminal responsibility.*" 46 C.F.R. § 407–1(b) (emphasis added). The Government's brief reiterates this point:

"[T]he stated purpose of the Coast Guard's investigation is to determine whether there was any incompetence or misconduct on the part of licensed or certified mariners, employees of the United States or any other party. The Board was specifically not convened for the purpose of passing on the rights and obligations of parties in civil litigation." Government's Brief at 4.

This Court deems the fact that the Coast Guard itself, in establishing the investigation mechanism, did not intend a resulting report to "fix civil . . . responsibility" to be the type of "negative factor" which the Advisory Committee has suggested should weigh against the evidentiary use of any evaluative conclusions or opinions contained in such a report.

■   Thus, examining the possible interpretations of the term "factual findings" against the background of statutory construction and the stated purposes of Coast Guard investigations, the Court finds that evaluative conclusions or opinions contained in the Coast Guard record and report will not be admissible at trial but that factual findings not coming within this category will be admissible. More specific application of this rule will have to await examination of the actual reports.

This analysis is entirely consistent with pre-Federal Rules of Evidence treatment of analogous aviation cases. In those cases the courts were faced with a statute which explicitly stated:

"No part of any report or reports of the National Transportation Safety Board relating to any accident or the investigation thereof, shall be admitted as evidence or used in any suit or action for damages growing out of any matter mentioned in such report or reports." 49 U.S.C. § 1441(e).

In *American Airlines, Inc. v. United States,* 418 F.2d 180 (5th Cir. 1969), a technical document emanating from a CAB investigation had been admitted into evidence. The court of appeals approved the admission, stating that " 'the primary thrust of the provision is to exclude CAB reports which express agency views as to the probable cause of the accident.' " *Id.* at 196, *quoting Berguido v. Eastern Airlines, Inc.,* 317 F.2d 628, 632 (3d Cir. 1963); *see Lobel v. American Airlines, Inc.,* 192 F.2d 217 (2d Cir.), *cert. denied,* 342 U.S. 945, 72 S.Ct. 558, 96 L.Ed. 703 (1951). The judicial gloss on 49 U.S.C. § 1441(e) supports the use under Rule 803(8) of factual findings emanating from government investigatory reports and the exclusion of any conclusions tending to fix responsibility.

Under the above theory, the NTSB report must also be excluded.[6] Evidentiary use of this material is also governed by statute. 49 U.S.C. § 1903(c) commands that

"[n]o part of any report of the Board, relating to any accident or the investiga-

The regulations promulgated under this authority are found in 46 C.F.R. Part 4. In particular, § 4.03–5 defines a "major marine casualty" as one including loss of life, and §§ 4.09–1 through 4.09–35 direct the procedure of a Marine Board of Investigation which is convened in the discretion of the Commandant where there has been a "major casualty" and where "further investigation thereof would tend to promote safety of life and property at sea and would be in the public interest." *Id.* § 4.09–1.

**6.** The NTSB is required to

"investigate or cause to be investigated (in such detail as it shall prescribe), and determine the facts, conditions, and circumstances and the cause or probable cause or causes of any—

.   .   .   .   .

"(E) major marine casualty, except one involving only public vessels, occurring on the navigable waters or territorial seas of the United States, or involving a vessel of the United States, in accordance with regulations to be prescribed jointly by the Board and the Secretary of the department in which the Coast Guard is operating. Nothing in this subparagraph shall be construed to eliminate or diminish any responsibility under any other Federal statute of the Secretary of the department in which the Coast Guard is operating: . . ." 49 U.S.C. § 1903(a)(1)(E).

tion thereof, shall be admitted as evidence or used in any suit or action for damages growing out of any matter mentioned in such report or reports." [7]

Even were this Court to construe section 1903(c) in a manner harmonious with prior interpretations in the aviation cases, the NTSB report would be inadmissible since it appears to consist solely of conclusions, the supporting facts being derived solely from the Coast Guard record and report.[8] Therefore, whatever findings are contained in the NTSB report would merely be repetitive of those in the Coast Guard record and report, and apart from evaluative disparities between the two reports, they may be assumed to be virtually the same. In view of this Court's initial determination that all conclusions, evaluations and opinions tending to fix responsibility should be excluded from evidence at this time, there appears to be no material in the NTSB report that can now be admitted.

### Testimony and Exhibits

In ruling on the admissibility of testimony and exhibits taken during the Coast Guard investigation, the Court is once again confronted with an ostensible conflict between two of the Federal Rules of Evidence. On the one hand, Rule 803(8), which is not conditioned on the availability of the witness at the proceeding in which the evidentiary matter is offered, permits the court to admit "[r]ecords . . . setting forth . . . (C) . . . factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness." The regulations controlling marine investigations include 46 C.F.R. § 4.09.20, which requires that "[t]he testimony of witnesses shall be transcribed and a complete record of the proceedings of a Marine Board of Investigation shall be kept." Accordingly, the particular "record" which movants seek to admit under Rule 803(8) specifically includes the testimony of witnesses.

On the other hand, Rule 804(b)(1) allows into evidence the "former testimony" of a declarant only if he or she is "unavailable as a witness." [9] The Notes of Advisory Committee on Rule 804(b)(1) reveal that the authors considered the overlap between this rule and Rule 803 and opted to continue the "unavailability" requirement with regard to prior testimony:

"Former testimony does not rely upon some set of circumstances to substitute for oath and cross-examination, since both oath and opportunity to cross-examine were present in fact. The only missing one of the ideal conditions for the giving of testimony is the presence of trier and opponent ('demeanor evidence'). This is lacking with all hearsay exceptions. Hence it may be argued that for-

---

7. This statute took effect on April 1, 1975, 49 U.S.C. § 1902(a), just three months before the effective date of the Federal Rules of Evidence. The near simultaneous enactment of these two statutes surely does not support any inference that Congress intended a repeal of section 1903(c) by implication.

8. No joint regulations have been issued pursuant to 49 U.S.C. § 1903(a)(1)(E), *quoted in* note 6 supra. The only regulation promulgated by the NTSB which alludes to such investigations is 49 C.F.R. § 801.36, which states:

"For those accidents which are investigated (including certain marine accidents investigated by the United States Coast Guard), the Board reports of the facts, conditions, and circumstances and its determinations of the cause or probable cause shall be issued approximately 6 months after the accident. . . ."

Thus, it would appear that the factual source for the NTSB report is the Coast Guard record and report. This Court has not been presented with anything to show that the NTSB developed factual findings independent of that primary source.

9. Rule 804(b)(1) reads:

"(b) Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

"(1) Former testimony. Testimony given as a witness at another hearing on the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination."

mer testimony is the strongest hearsay and should be included under Rule 803, supra. However, opportunity to observe demeanor is what in a large measure confers depth and meaning upon oath and cross-examination. Thus in cases under Rule 803 demeanor lacks the significance which it possesses with respect to testimony. In any event, the tradition, founded in experience, uniformly favors production of the witness if he is available. . . ." *Reprinted in* Fed.R.Evid., 28 U.S.C.A. 695 (1975).

None of the parties to this motion has averred that any of the former witnesses at the Marine Board of Investigation will be "unavailable" within the statutory meaning of Rule 804(a). Therefore, it is premature to consider the use of this former testimony, since it may be introduced at trial only upon the necessary foundation.

Exhibits, however, do not present the same "demeanor" problems. Therefore, such exhibits as were accepted during the Coast Guard investigation constitute part of the public record of that proceeding and will be admissible at trial under Rule 803(8).

In summary, the Court determines at this time that only factual findings and exhibits contained in the record and report of the United States Coast Guard Marine Board of Investigation will be admissible into evidence in the prospective trial of this action. Testimony taken during the Coast Guard investigation will be admissible only upon a showing that the former witness is unavailable as a witness at this trial.

Accordingly, United States Magistrate Martin D. Jacobs will hear and determine all questions concerning which elements of the Coast Guard record and report are inadmissible evaluative conclusions or opinions tending to fix responsibility in this action and which elements are admissible factual findings.

So ordered.