Joseph J. MEYER, Joseph L. Meyers, Donnie R. Haney, Dale Saathoff, and Dan Muirhead, Appellants (Defendants),

v.

Pamela Sue KENDIG, Appellee (Plaintiff).

No. 5554.

Supreme Court of Wyoming.

March 12, 1982.

ject the natural father's rights without giving   him the opportunity to ever establish them.

Wade Brorby and Thomas D. Roberts, of Morgan & Brorby, Gillette, and Michael A. Williams and Craig R. Maginness, of Sherman & Howard, Denver, Colo., attys. in good standing, Bar of Colorado, for appellants.

Edward P. Moriarity and Gary L. Shockey, of Spence, Moriarity & Schuster, Jackson, for appellee.

Carl L. Lathrop and Nick Kalokathis, of Lathrop & Uchner, P. C., Cheyenne, filed an amicus curiae brief on behalf of The Wyoming Mining Association.

Gerald A. Stack, Deputy Atty. Gen., Crim. Div., Allen C. Johnson, Senior Asst. Atty. Gen., and Carl J. Hildebrand, Asst. Atty. Gen., filed an amicus curiae brief on behalf of the State of Wyoming.

J. N. Murdock, of Vlastos, Reeves & Murdock, P. C., Casper, filed an amicus curiae brief on behalf of the Defense Lawyers' Association of Wyoming.

Donald J. Sullivan, Stephen H. Kline, and Sharon A. Fitzgerald, Cheyenne, filed an amicus curiae brief on behalf of The Wyoming Trial Lawyers Association.

Before ROSE, C. J., RAPER, THOMAS and ROONEY, JJ., and GUTHRIE, J., Ret.

ROONEY, Justice.

This appeal is from a judgment rendered on a jury verdict which found that appellee-plaintiff's injuries were caused in part by the negligence of appellants. One of the issues presented on appeal is whether or not the trial court erred in denying appellants' motion to strike the allegations of ordinary negligence in the complaint as improper under § 27–12–103(a), W.S.1977.[1] In denying the motion, the trial court ruled that such section was unconstitutional under Art. 1, § 34[2], Art. 3, § 27[3], and Art. 10, § 4[4] of the Wyoming Constitution.

---

1. Section 27–12–103(a), W.S.1977, provides:
   "The rights and remedies provided in this act [§§ 27–12–101 to 27–12–804] for an employee and his dependents for injuries incurred in extrahazardous employments are in lieu of all other rights and remedies against any employer making contributions required by this act, or his employees acting within the scope of their employment unless the employees are culpably negligent, but do not supersede any rights and remedies available to an employee and his dependents against any other person."

2. Art. 1, § 34 of the Wyoming Constitution provides:

"All laws of a general nature shall have a uniform operation."

3. Art. 3, § 27 of the Wyoming Constitution provides in part:

"The legislature shall not pass local or special laws in any of the following enumerated cases * * * for limitation of civil actions * * * granting to any * * * individual * * * any special or exclusive privilege, immunity or franchise * * *."

4. Art. 10, § 4 of the Wyoming Constitution provides:

"No law shall be enacted limiting the amount of damages to be recovered for causing the

Inasmuch as we find such ruling to be error, we reverse and remand the case for a new trial.

Appellants are co-employees of appellee. All were employees of AMAX Coal Company. Appellee was employed as a truck driver on a surface mining operation in Campbell County. She was injured in a collision with a truck being driven by appellant Muirhead. The negligence of the other appellants was alleged to consist of failure to adequately train appellant Muirhead, allowing him to drive with a hearing impediment, and requiring a blind side backing procedure at a dump site. Appellant Meyer was the Assistant Mine Superintendent. Appellant Meyers was the third-shift General Foreman. Appellant Haney was the Mine Safety Representative. Appellant Saathoff was the third-shift Stripping Foreman.[5]

Other than the constitutional issue, we will address those other issues presented on this appeal which will probably again arise in further proceedings in this case, *Chicago and N.W. Ry. Co. v. City of Riverton*, 70 Wyo. 119, 247 P.2d 660 (1952); *McGuire v. McGuire*, Wyo., 608 P.2d 1278 (1980). Facts relative thereto will be set out in connection with the discussion thereof.

## CONSTITUTIONALITY OF § 27–12–103(a), W.S.1977 [6]

Prior to an amendment in 1914, Art. 10, § 4, Wyoming Constitution, consisted only of the first two sentences of the present section.[7] Pursuant to the amendment, the predecessor to Wyoming's present Worker's Compensation Act was passed by the legislature in 1915. The act was the legislative embodiment of compromise between employers and employees who recognized the need for a new system to compensate employees for employment related injuries.

" * * * [T]he legislature was substituting one entirely new system for another that it deemed unwise and not meeting justly and equitably the circumstances of present-day employments, in providing certain and speedy relief without the difficulty, expense and delays of litigation." *Stephenson v. Mitchell*, Wyo., 569 P.2d 95, 98 (1977).

See *Barnette v. Doyle*, Wyo., 622 P.2d 1349 (1981); *Zancanelli v. Central Coal & Coke Co.*, 25 Wyo. 511, 173 P. 981 (1918); 1 Larson, Workmen's Compensation Law, §§ 4, 5; 99 C.J.S. Workmen's Compensation, § 5; 81 Am.Jur.2d Workmen's Compensation, § 2; *Pan American Petroleum Corporation*

---

injury or death of any person. Any contract or agreement with any employee waiving any right to recover damages for causing the death or injury of any employee shall be void. As to all extra hazardous employments the legislature shall provide by law for the accumulation and maintenance of a fund or funds out of which shall be paid compensation as may be fixed by law according to proper classifications to each person injured in such employment or to the dependent families of such as die as the result of such injuries, except in case of injuries due solely to the culpable negligence of the injured employee. Such fund or funds shall be accumulated, paid into the state treasury and maintained in such manner as may be provided by law. The right of each employee to compensation from such fund shall be in lieu of and shall take the place of any and all rights of action against any employer contributing as required by law to such fund in favor of any person or persons by reason of any such injuries or death."

5. AMAX Coal Company Mine Superintendent, Don Van Dyke, and Personnel and Employee Relations Representative, Steve Youngbauer,

were included as defendants in the complaint. AMAX Coal Company's motion to dismiss as to it was granted because of the immunity conferred by § 27–12–103(a) (supra, footnote 1). Van Dyke was dismissed as a party because he had not been served. Youngbauer was dismissed as a party to the appeal by stipulation of the parties after notice of appeal was filed. The names of Van Dyke and of the third-shift Pit Foreman, Marlin Bisher, were added to the verdict form for the purpose of allocating negligence. The jury allocated negligence as follows:

| | |
|---|---|
| Youngbauer | 4% |
| Meyer | 6% |
| Van Dyke | 8% |
| Meyers | 10% |
| Haney | 12% |
| Saathoff | 18% |
| Bisher | 18% |
| Muirhead | 24% |

6. See footnote 1, supra.

7. See footnote 4, supra.

is not applicable.

1238

*v. Maddux Well Service*, Wyo., 586 P.2d 1220 (1978).

Worker's compensation laws were enacted as a form of industrial insurance for victims of industrial accidents, regardless of any fault or breach of duty on the part of the employer. *Barnette*, supra, at 1352; *Markle v. Williamson*, Wyo., 518 P.2d 621, 624 (1974); *Bence v. Pacific Power and Light Co.*, Wyo., 631 P.2d 13, 15 (1981). In return for their contributions to the compensation fund, employers were granted immunity from suits.[8] In return, for relinquishing their right to common-law actions against the employers when there was cause therefor in event of work-related injuries, the employees received speedy relief for such injuries, regardless of lack of fault on the part of the employer and without cost and delay attendant to legal action. *Barnette*, supra, at 1352, quoting from *Boggs v. Blue Diamond Coal Co.*, 590 F.2d 655, 658 (6th Cir. 1979), *cert. denied* 444 U.S. 836, 100 S.Ct. 71, 62 L.Ed.2d 47 (1979); *Zancanelli*, supra, at 543, 173 P. 981.

Before a 1975 amendment, the Worker's Compensation Act did not refer to immunity for co-employees as does § 27–12–103(a). It was held in *In Re Byrne*, 53 Wyo. 519, 86 P.2d 1095 (1939) and in *Zancanelli*, supra, that the act abolished common-law doctrines of *respondeat superior* and fellow-servant rule, and that the act was intended to be in the nature of insurance and not compensation for negligence. Over thirty years later, in *Markle v. Williamson*, supra, the specific language of the act was held to grant immunity only to the employer and not to preclude the common-law right of one employee to sue a fellow employee.[9]

The *Markle v. Williamson* opinion, supra, brought an immediate reaction from the legislature. At its next session, it placed into the act the present language relative to immunity of co-employees for all but culpable[10] negligence.[11] We are now presented with a question as to the constitutionality of such legislative action.

■ When the constitutionality of a statute is assailed, we are governed by the following standards:

"Statutes are presumed to be constitutional unless affirmatively shown to be otherwise, and one who would deny the constitutionality of a statute has a heavy burden. The alleged unconstitutionality must be clearly and exactly shown beyond any reasonable doubt. *Stephenson v. Mitchell ex rel. Workmen's Compensation Department*, Wyo.1977, 569 P.2d 95, 97; see also cases digested at West's Wyoming Digest, Constitutional Law, ■ One who assails a classification must carry the burden of showing that it does not rest on a reasonable basis, but is essentially arbitrary, and if any

---

8. We have narrowly construed the immunity provisions of the Wyoming Worker's Compensation Act. *Bence v. Pacific Power and Light Co.*, supra; *Barnette v. Doyle*, supra; *Markle v. Williamson*, supra.

9. The opinion in *Markle v. Williamson*, supra, buttressed its position by finding that Art. 10, § 4, Wyoming Constitution, did not change the common-law right of an employee to sue his co-employee for negligence. However, a majority of the court did not concur in the constitutional aspect of such opinion.

10. The original language established liability if the negligence was gross. In 1977, it was changed to culpable.

11. Similar reactions by legislatures in other states have resulted from court decisions holding co-employees liable under Worker's Compensation Acts. *Tawney v. Kirkhart*, 130 W.Va. 550, 44 S.E.2d 634 (1947) followed by

W.Va.Code § 23–2–6a, 1981 Replacement Vol.; *Webster v. Stewart*, 210 Mich. 13, 177 N.W. 230 (1920) followed by Mich.Comp.Laws Ann. § 413.15; see *Helmic v. Paine*, 369 Mich. 114, 119 N.W.2d 574 (1963); *Wilson v. Al-Huribi*, 55 Mich.App. 95, 222 N.W.2d 49 (1974); *Ransom v. Haner*, 174 F.Supp. 82 (D.C.Alaska 1959) followed by Alaska Stat. § 23.30.015 (1972); *Hockett v. Chapman*, 69 N.M. 324, 366 P.2d 850 (1961), and *Roseberry v. Phillips Petroleum Company*, 70 N.M. 19, 369 P.2d 403 (1962) followed by N.M.Stat.Ann. § 52–1–8 (1978); *Roda v. Williams*, 195 Kan. 507, 407 P.2d 471 (1965), and *Tully v. Gardner's Estate*, 196 Kan. 137, 409 P.2d 782 (1966) followed by Kan.Stat. Ann. § 44–504 (1973); *Kilpatrick v. Superior Court in and for County of Maricopa*, 105 Ariz. 413, 466 P.2d 18 (1970), and *Halenar v. Superior Court in and for County of Maricopa*, 109 Ariz. 27, 504 P.2d 928 (1972) followed by Ariz. Rev.Stat.Ann. 1981 Supp.Pamph. § 23–1022.

state of facts can be reasonably conceived which sustain the classification, such facts will be assumed. *Mountain Fuel Supply Co. v. Emerson*, Wyo.1978, 578 P.2d 1351, 1355; *McGowan v. State of Maryland*, 1961, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393; *Carmichael v. Southern Coal & Coke Co.*, 1937, 301 U.S. 495, 509, 57 S.Ct. 868, 872, 81 L.Ed. 1245, 109 A.L.R. 1327. * * * " *Nickelson v. People*, Wyo., 607 P.2d 904, 910 (1980).

"Courts have a duty to uphold the constitutionality of statutes which the legislature has enacted if that is at all possible, and any doubt must be resolved in favor of constitutionality. *Witzenburger v. State*, Wyo.1978, 575 P.2d 1100, 1112; *Lund v. Schrader*, Wyo.1971, 492 P.2d 202, 206. * * * " *Washakie County School District Number One v. Herschler*, Wyo., 606 P.2d 310, 319 (1980), *reh. denied, cert. denied* 449 U.S. 824, 101 S.Ct. 86, 66 L.Ed.2d 28 (1980).

And since an ordinary interest is involved in this case, the following standard also applies:

" * * * When an ordinary interest is involved, then a court merely examines to determine whether there is a rational relationship between a classification made by the statute or statutes being viewed and a legitimate state objective. * * * " *Washakie County School District Number One v. Herschler*, supra, 606 P.2d at 333.

◼ Appellee argues that the first sentence of Art. 10, § 4, Wyoming Constitution,[12] prohibits the legislature from granting immunity to co-employees for negligence, regardless of degree. She acknowledges the propriety of immunity granted to employers because of the subsequent language in Art. 10, § 4 of the Wyoming Constitution. Such first sentence states that "no law shall be enacted limiting the *amount of damages* to be recovered * * * " (emphasis added). Section 27–12–103(a) does not limit the amount of damages to be recovered. It limits the cause of action available for a recovery. The fact that the first sentence of Art. 10, § 4 relates only to the amount of damages is exemplified by the second sentence which pertains to the "right to recover."[13] A "limitation in amount" and a "right to recover" were regarded as separate issues and treated separately by the framers of the Wyoming Constitution. See Journal and Debate of the Constitutional Convention of the State of Wyoming, pp. 443–454 and 614–616 (1889). The plain language of such first sentence and its ordinary meaning reflects its prohibition to be against laws limiting the "amount of damages." Section 27–12–103(a) does not do that. This fact is determinative of the constitutionality of such section insofar as Art. 10, § 4 of the Wyoming Constitution is concerned. Furthermore, if the first sentence of Art. 10, § 4, were given the broad application urged by appellee, it would conflict with, and would make enactments impermissible on, such subjects as comparable negligence, statutes of limitation, contribution among joint tortfeasors, etc.

Given the basic thrust of the Worker's Compensation Act—speedy relief for the worker for work-related injuries without the difficulty, expense and delays of litigation, *Stephenson v. Mitchell*, supra,—it would seem incongruous to make the same worker liable for his ordinary negligent acts during employment. Such a penalty would not only result in a work place of questionable harmony and in hundreds of legal actions, but it would subject the Worker's Compensation Act to a doubtful future. If co-employees are to be held liable for ordinary negligence in the work place and are required to bear the loss and pay the judgments, the employer will receive a direct benefit by the subrogation rights of the worker's compensation fund, which directly affect the premiums paid by the employer, § 27–12–104, W.S.1977. Thus the employee would not only have common-law liability but he would be bearing a portion of the cost which was intended to be only that of the employer. If, on the other hand, the

---

12.  See footnote 4, supra.

13.  See footnote 4, supra.

employer agrees to pay the judgments obtained against his employees for their ordinary negligence in the work place, by insurance or otherwise, he would be paying for the common-law liability in addition to the Worker's Compensation Act benefits contrary to the bargain and philosophy for such act. Further, if an employer agrees to pay for judgments obtained against his employees, the incentive for him to contribute under the act is diminished and its funding will suffer.

The trial court put emphasis on Art. 3, § 27 of the Wyoming Constitution [14] in declaring § 27–12–103(a) unconstitutional. We have held that this constitutional provision means only that the statute must operate alike upon all persons in the same circumstances.

"The prohibition against special legislation does not mean that a statute must affect everyone in the same way. It only means that the classification contained in the statute must be reasonable, and that the statute must operate alike upon all persons or property in like or the same circumstances and conditions. * * * " *Mountain Fuel Supply Company v. Emerson*, Wyo., 578 P.2d 1351, 1356 (1978).

Section 27–12–103(a) operates alike on all employees in the same circumstances and conditions. The classification is reasonable in view of the object to be obtained—harmony among employees, the maintenance of a sound worker's compensation fund, and the overall purpose and philosophy behind the Worker's Compensation Act. *Ludwig v. Harston*, 65 Wyo. 134, 197 P.2d 252 (1948); *May v. City of Laramie*, 58 Wyo. 240, 131 P.2d 300 (1942); *Bazley v. Tortorich*, La., 397 So.2d 475 (1981). To penalize the employee by making him liable for his ordinary negligent acts is inconsistent with the purpose of worker's compensation acts, i.e., such purpose is to abolish the common-law system relating to injuries to employees as inadequate to meet modern conditions and conceptions of moral obligations and to substitute therefor a system whereby the cost of industrial accidents becomes an element of production which is charged through the industry generally to the community itself. The classification here made is reasonable to the end of that public interest.

Art. 1, § 34 of the Wyoming Constitution [15] similarly does not proscribe reasonable classifications. *Mountain Fuel Supply Company v. Emerson*, supra; *May v. City of Laramie*, supra. Inasmuch as the classification made in § 27–12–103(a) was reasonable in view of the object to be obtained, it was not violative of Art. 1, § 34 of the Wyoming Constitution.

In the brief and argument, appellee also contends § 27–12–103(a) to be violative of Art. 1, § 8 [16] and Art. 9, § 4 [17] of the Wyo-

---

14. See footnote 3, supra.

15. See footnote 2, supra.

16. Art. 1, § 8 of the Wyoming Constitution provides:
    "All courts shall be open and every person for an injury done to person, reputation or property shall have justice administered without sale, denial or delay. Suits may be brought against the state in such manner and in such courts as the legislature may by law direct."

17. Art. 9, § 4 of the Wyoming Constitution provides:
    "For any injury to person or property caused by wilful failure to comply with the provisions of this article, or laws passed in pursuance hereof, a right of action shall accrue to the party injured, for the damage sustained thereby, and in all cases in this state, whenever the death of a person shall be caused by wrongful act, neglect or default, such as would, if death had not ensued, have entitled the party injured to maintain an action to recover damages in respect thereof, the person who, or the corporation which would have been liable, if death had not ensued, shall be liable to an action for damages notwithstanding the death of the person injured, and the legislature shall provide by law at its first session for the manner in which the right of action in respect thereto shall be enforced."

The reference to the "provisions of this article" is to establishment of the office of mine inspector and of a state geologist, restriction on employment of women and of boys under the age of fourteen years, establishment of courses to be taught on mining and metallurgy and directing the legislature to provide by law for the "proper development, ventilation, drainage and operation" of mines.

ming Constitution. The services of the district court and of this court have been utilized in this case. The fact that the courts are required to be open and to afford justice for injury done does not mean that a party is assured of success in a legal action, or that standards cannot be set for, and limitations cannot be placed upon, causes of action—all in the interest of justice. The court was open to appellee. She has availed herself of its services. The administration of justice in this case is the process in which we are now involved. Section 27–12–103(a) only sets a standard to be applied by the courts in an action by an employee against a co-employee for negligence resulting in a work-related injury. Such is not violative of Art. 1, § 8 of the Wyoming Constitution.

Art. 9, § 4 of the Wyoming Constitution concerns "wilful" failure to comply with its provisions. It is not clear as to the manner in which the provisions of such Art. 9 have pertinence to the facts of this case, but, in any event, the claims for relief in this matter are premised on negligence and not on willfulness or on intentional tort.

Section 27–12–103(a) is constitutional.

## OTHER ISSUES

Of the five other issues presented on appeal by appellants, two of them are unlikely to be pertinent in a new trial. The exclusion of Exhibit KK (alleged as error) was premised on surprise engendered by its late discovery.[18] The element of surprise will not be present at the new trial. If the jury instruction is again given setting forth plaintiff's life expectancy from the time of the accident (alleged as error) rather than from the time of the trial, appellants can request special interrogatories or pertinent questions on a special verdict form which will evidence whether or not there is a double recovery of damages.

█ Appellants allege error in two respects relative to the exclusion of evidence concerning appellee's prior felony record. They word the issues as follows:

"Whether the trial court committed reversible error by refusing to allow Defendants' counsel to cross-examine Plaintiff with respect to her prior felony record pursuant to Wyoming Rule of Evidence 609."

"Whether the trial court committed reversible error by refusing to allow Defendants' counsel to cross-examine Plaintiff, pursuant to Wyoming Rule of Evidence 608, with respect to false statements which she made on two previous employment applications, Plaintiff's Exhibit 43 and Defendants' Exhibit H, as to whether she had been convicted of a felony."

Appellee had been convicted in Ohio of the crime of burglary and breaking and entering, a crime punishable by imprisonment in excess of one year. After serving sixty days in the Ohio State Reformatory for Women, she was released on parole. The parole was transferred to Wyoming when she moved to Wyoming. A few days before commencement of the trial, the Ohio court ordered an expungement of her criminal record on the basis of rehabilitation.

Appellants argue that the Ohio court's order was inaccurate inasmuch as appellee had pled nolo contendere to charges of petit larceny, assault and battery and breach of peace subsequent to the conviction in Ohio, and that, therefore, rehabilitation was not accomplished.

Appellants also argue that they were improperly denied cross-examination of appellee concerning the truth of a "no" answer to questions as to whether she had been convicted of a felony on her employment applications to AMAX Coal Company and to Anaconda Copper Company.

Rule 609, W.R.E., provides in pertinent part:

"(a) *General rule.*—For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from

---

**18.** Exhibit KK was a truck driver's report offered to show the time spent in driver's training of appellant Muirhead.

him or established by public record during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of one (1) year under the law under which he was convicted, *and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant,* or (2) involved dishonesty or false statement, regardless of the punishment.

\*    \*    \*    \*    \*    \*

"(c) *Effect of pardon, annulment, or certificate of rehabilitation.* —Evidence of a conviction is not admissible under the rule if (1) the conviction has been the subject of a pardon, annulment, certificate of rehabilitation, or other equivalent procedure based on a finding of the rehabilitation of the person convicted \* \* \*." (Emphasis added.)

Rule 608, W.R.E., provides in pertinent part:

"(b) *Specific instances of conduct.* —Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, *in the discretion of the court,* if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning *his character for truthfulness or untruthfulness* \* \* \*." (Emphasis added.)

Both rules make the admission of such evidence to be in the discretion of the trial court. Reversible error would exist only if there was an abuse of discretion.

"A court does not abuse its discretion unless it acts in a manner which exceeds the bounds of reason under the circumstances. In determining whether there has been an abuse of discretion, the ultimate issue is whether or not the court could reasonably conclude as it did. An abuse of discretion has been said to mean an error of law committed by the court under the circumstances. \* \* \*" *Martinez v. State,* Wyo., 611 P.2d 831, 838 (1980).

The trial court gave considerable attention to the problem. It was not beyond the bounds of reason for it to make a determination that the probative value of the evidence would not outweigh its prejudicial effect under the circumstances. We do not agree with appellants' contention that inquiry should be made as to the merits behind the Ohio court's order. The finding of rehabilitation was made by the Ohio court. The expungement order issued. The crime, the conviction, the sentence, the service of the sentence, and the expungement thereof, were all matters for determination by the Ohio courts. Their action relative thereto was properly presented to the trial court. There was no contention of lack of jurisdiction or of due process by the Ohio courts. The trial court properly gave full faith and credit to the determination of the Ohio court.[19] The requirements of Rule 609(c), W.R.E., relative to inadmissibility of evidence were met.

It was not unreasonable for the trial court to exercise its discretion in refusing to allow cross-examination concerning the answers made by appellee on the employment applications when such answers would result in the introduction of evidence which Rule 609(c), W.R.E., was designed to exclude. Cross-examination was allowed concerning the truth of other answers on the application.

There was no abuse of discretion.

■ Finally, appellants allege error with reference to the admission into evidence of Exhibit 5, a report of Federal Mine Inspector Iszler. The report was admitted pursuant to Rule 803(8), W.R.E.[20] Appellants'

---

19. Art. IV, § 1 of the Constitution of the United States provides in pertinent part:

"Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. \* \* \*"

20. Rule 803, W.R.E., provides in pertinent part:

"The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

\*    \*    \*    \*    \*    \*

objection was not only on the basis of hearsay, but was on the basis that the report reflected a finding of negligence which was the ultimate determination to be made by the jury.

Under the heading of "negligence," boxes on the report were checked which reflected that the condition "should have been known to the operator," the act or omission was "by non-management personnel," was "by management personnel," was "under the direct operation of management," and was "against posted or published instructions at the mine." After Exhibit 5 was admitted into evidence over objection, Mr. Iszler testified in part as follows:

"Q. Now, Mr. Iszler, at the time—the evidence at the time that you signed or filled out those boxes, what was your understanding with respect to the pattern for approaching to back that was being used? Was it a 270-degree turn and back or a 90-degree turn and back?

"A. 270-degree turn, sir.

"Q. If, in fact, it was a 90-degree turn and back, would that change the boxes that you would have checked?

"A. Yes, sir. Had I known that, that would have changed that.

"Q. In what way?

"A. Instead of checking all four of the checks under negligence, number two, the act or omission was—I would have checked number one, which I have checked here.

"Q. Uh-huh.

"A. 'By non-management personnel.' I would have excluded number two, 'By management personnel.' I would have excluded number three, 'Under the direct observation of management.' I would have checked number four, 'Against posted or published instructions at the mine.'"

At the new trial and in view of this testimony, the trial court might find that the report lacked sufficient trustworthiness to be admissible. But, beyond that, the report is inadmissible as expressing an opinion or conclusion on negligence—the very issue to be decided by the jury.

We recognize that there is a conflict of authority on the question of whether or not opinions and evaluations in official reports, as opposed to purely factual findings, are admissible under Rule 803(8)(C).[21] Annotation: "Admissibility under Rule 803(8)(C) of Federal Rules of Evidence[22], of 'factual findings resulting from investigation made pursuant to authority granted by law,'" 47 A.L.R.Fed. 321, and we do not here determine a position relative thereto, except to the extent of holding that an opinion or evaluation of the ultimate issue to be decided by the jury is inadmissible, whether it be presented in an official report or in any other fashion.

"* * * In a negligence case, a report stating barely that defendant was negligent should probably be excluded, but a statement that he was traveling at a certain speed probably should not be even though in one sense this is certainly a conclusion. * * *" 4 Weinstein's Evidence, § 803(8)[03], p. 803–206.

See *Baker v. Elcona Homes Corporation*, 588 F.2d 551 (6th Cir. 1978), admitting re-

"(8) *Public records and reports.*—Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, or (C) in civil actions and proceedings and against the state in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness."

21. Exhibit 5 was admissible, if at all, under clause (C) of Rule 803(8), W.R.E., (see footnote 20). Clause (A) has to do with activities of the agency itself. Clause (B) requires personal knowledge, i.e. "matters observed," and two "duties": One, to observe, and two, to report. Clause (C) concerns reports of "investigation." See 4 Louisell and Mueller, Federal Evidence, § 455.

22. Rule 803, W.R.E. is identical to Rule 803, Federal Rules of Evidence.

port stating automobile entered intersection against a red light; *Complaint of American Export Lines, Inc.*, 73 F.R.D. 454 (S.D.N.Y. 1977), and *Smith v. Ithaca Corporation*, 612 F.2d 215 (5th Cir. 1980), both of which note that Rule 803(6) [23] and Rule 803(8) are similar, but that the words "factual findings" are substituted in Rule 803(8) for "opinions" and "diagnoses" in Rule 803(6), thus indicating a legislative intent to have "factual findings" be more restrictive in application of Rule 803(8) than "opinions" or "diagnoses." [24]  See *In Re Estate of Carey*, Wyo., 504 P.2d 793 (1972); *State ex rel. Kirk v. Gail*, Wyo., 373 P.2d 955 (1962).

Exhibit 5 should not have been received into evidence or the reference therein to opinions as to the ultimate question of whether or not appellants were negligent should have been deleted or blocked from the exhibit before such receipt.

Reversed and remanded for a new trial.

ROSE, Chief Justice, dissenting.

As discussed in the majority opinion, this appeal presents a question concerning the constitutionality of § 27–12–103(a), W.S. 1977, which, except for culpable negligence, extends the immunity granted employers under the Worker's Compensation Act and Art. 10, § 4 of the Wyoming Constitution, to co-employees who negligently injure other co-employees while in the course of employment.  This disputed section was added to the worker's compensation statutes by the legislature in response to our holding in *Markle v. Williamson*, Wyo., 518 P.2d 621, 625 (1974), which says that the act only extends the immunity to the contributing employer and not a co-employee.  The majority opinion correctly notes, however, that the constitutional issue discussed in *Markle* was not supported by a majority of the court, and the case was limited to a question of statutory construction only.[1]  Thus, the question left undecided in *Markle* comes to us directly in this case.  In response thereto, the majority of the court have "once again" ignored the original purpose of the Wyoming Worker's Compensation Act by reaffirming the power of the legislature to incorporate into the scheme elements that were clearly neither contemplated nor intended by the 1914 amendment to Art. 10, § 4.  I say "once again," because the position I expressed in my dissent in *Stephenson v. Mitchell*, Wyo., 569 P.2d 95, 100–112 (1977), applies to this case, and it is worth revisiting.  With my *Stephenson* analysis in mind, I would have affirmed the trial court's holding that § 27–12–103(a) is unconstitutional as being in violation of Art. 10, § 4 of the Wyoming Constitution.

**23.** Rule 803(6), W.R.E. provides:

"(6) *Records of regularly conducted activity.*—A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term 'business' as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit."

**24.** Legislative history presents conflicting intentions. The House Judiciary Report to accompany H.R. 5463, Report 93–650, November 15, 1973, reflects that: "The Committee intends that the phrase 'factual findings' be strictly construed and that evaluations or opinions contained in public reports shall not be admissible under this Rule." The Senate Judiciary Report to accompany H.R. 5463, Report 93–1277, U.S. Code Cong. & Admin.News, p. 7051, October 18, 1974, reflects that it "takes strong exception to this limiting understanding of the application of the Rule." The Joint Conference Committee Report makes no reference to the issue.

**1.** The split in *Markle v. Williamson*, supra, occurred because two members of the court had concluded that Art. 10, § 4, of the Wyoming Constitution precluded any limitation on the common-law right of the employee to sue a negligent co-employee for damages. The dissenters from that portion of the opinion felt that it was not an issue presented by the case. 518 P.2d at 625–626 (opinion of Guthrie, J., concurring and dissenting in part, with whom McClintock, J., joined).

The people of Wyoming amended Art. 10, § 4, of the Wyoming Constitution in the early part of the century in order to make way for the legislature to structure a comprehensive "worker's compensation" statute. See *Zancanelli v. Central Coal & Coke Co.*, 25 Wyo. 511, 173 P.2d 981 (1918). The need for an amendment came out of the fact that the original language of Art. 10, § 4 prohibited the enactment of any law limiting the amount of damages to be recovered for causing injury or death and rendering void contracts wherein employees undertook to waive their right to recover for injury or death. As referenced by the majority,[2] Art. 10, § 4, before amendment, read:

"No law shall be enacted limiting the amount of damages to be recovered for causing the injury or death of any person. Any contract or agreement with any employee waiving any right to recover damages for causing the death or injury of any employee shall be void."

The amendment made room for the worker's compensation concept by authorizing the legislature to enact a scheme whereby the employee gave up all of his or her common-law rights of action against the employer, in return for the guarantee that the employer would contribute to a fund from which the employee could receive direct compensation for all work-related injuries except those where it could be shown that the employee was culpably negligent. From the inception of worker's compensation in Wyoming, this court consistently construed the statutes as enacting a form of industrial insurance which authorized compensation in the nature of accident insurance rather than in the nature of damages. *Barnette v. Doyle*, Wyo., 622 P.2d 1349 (1981); *Markle v. Williamson*, supra, *Zancanelli v. Central Coal & Coke*, supra; *Hotell-*

*ing v. Fargo-Western Oil Co.*, 33 Wyo. 240, 238 P. 542 (1925). The decisions of this court even went so far as to ignore provisions in the statutes which could not be reconciled with the concept of industrial accident insurance.[3] Through these opinions we have irrefutably established the proposition that the Wyoming Worker's Compensation Act stemmed from contract and not from notions of tort. As we said in *Markle v. Williamson*, supra, 518 P.2d at 624:

"To say that workmen's compensation in Wyoming is in the nature of insurance is to say it stems from contract. Indeed, the clear implication in *Zancanelli v. Central Coal & Coke Co.*, 25 Wyo. 511, 173 P. 981, 989 is that our Workmen's Compensation Act is in contract and not in tort."

Not until the decision in *Stephenson v. Mitchell*, supra, did this court permit the law of tort to seep back into the worker's compensation scheme. I pointed this out in my dissent in that case. In *Stephenson*, the majority of the court upheld the reimbursement provision of § 27–54, W.S.1957, now embodied in § 27–12–104, W.S.1977, which requires the injured worker to reimburse the compensation fund with proceeds from any recovery received from a third party arising out of an injury for which benefits had been paid. The provision was upheld on the basis that such decisions involving the benefit schedule were within the province of the legislature to enact. *Stephenson v. Mitchell*, supra, 569 P.2d at 98–99. I dissented from that holding because, as I pointed out, it was never within the contemplation of the framers of the amendment to Art. 10, § 4, that the employee would in any manner contribute to the fund. 569 P.2d at 110. Such a provision interjected concepts of tort into the scheme

See n. 4 of the majority opinion, at 1236–1237.

[3.] For instance, in *In Re Byrne*, 53 Wyo. 519, 86 P.2d 1095 (1939), and *Hotelling v. Fargo-Western Oil Co.*, supra, we held that the employer could not avoid payment of a claim through the device of claiming he was free of fault and that a third party was directly responsible for the injury or death, because such a device could

not be reconciled in any way with the idea that "worker's compensation" was in the nature of an insurance contract. In expressing such a viewpoint, we were forced to directly ignore the literal import of former § 8 of Chapter 124, S.L. of Wyoming 1915 which specifically permitted the use of such argument as an avoidance device.

that were inconsistent with the settled and prevailing view that "workmen's compensation" was in the nature of industrial accident insurance. To allow the employer to recoup his contributions by requiring reimbursement from the employee after recovery from a third party who was at fault, resulted in embracing a concept which says that the original benefits received from the fund were in the nature of damages for a tortious injury, rather than for payment under a contract of insurance. It amounted to a limitation on the right to recover damages for injury or death, which limitation was not contemplated or authorized by the amendment to Art. 10, § 4, and was, in my mind, clearly unconstitutional.

Likewise, in the present appeal, the majority have permitted the legislature to extend the immunity or protections of the worker's compensation program to areas not given or intended by the constitutional amendment which grants authority to the legislature to enact a worker's compensation statute. The wrong conclusion is reached, in this case, by asserting a new purpose for worker's compensation—that being the advancement and support of employee harmony. Never before have we asserted such a legislative purpose, because it is inherently inconsistent with the idea that worker's compensation derives from contract and not tort and, furthermore, it embraces a faulty factual assumption. Proof of this becomes clear when the facts of *Markle* are revisited. The notion of employee harmony—when applied to *Markle*, as an example—emerges as a pure figment of judicial imagination. In that case, any prior good management-employee relationship had long since been shattered through the unbelievable and continuing negligence of Supervisor Markle prior to the time when the tank blew up killing Williamson.

The majority support their decision to the effect that § 27–12–103 is constitutional by concluding that to permit the employee to recover from a negligent co-employee has the undesirable result of allowing the employer to receive a direct benefit because the recovering employee will then have to reimburse the fund under § 27–12–104,

W.S.1977. Thus, says the majority opinion, the negligent co-employee would be paying for the injury rather than the employer. This is exactly the fault I found with the *Stephenson* majority opinion wherein it was held that third-party recovery moneys were to go for fund reimbursement. That was a reimbursement obligation that was never contemplated either by the Constitution or the supporting statutes. Now—in this appeal—the majority say that one employee should not be permitted to recover from another employee because it has the effect of causing a party to the contract of worker's compensation insurance to reimburse the fund when that was not the intention of the legislature. Where is the consistency? We wouldn't find ourselves in this position if we had not injected the law of tort into industrial accident contract law in the first place. The original sin was committed when we first gave approval to a statute which directed the employee to reimburse the fund in *Stephenson v. Mitchell*, supra.

Similar to the reimbursement provision attacked in *Stephenson*, § 27–12–103 incorporates elements into worker's compensation never intended by the amendment to Art. 10, § 4, and, in my mind, is likewise an unconstitutional assertion of authority by the legislature. All the amendment contemplated that the employee would give up in return for contributing employer immunity, were his or her right to sue the employer. It was never contemplated that in the employee's trade-off with the employer, the employee would give up his or her right to sue others who caused injury or death. This fact has led us to consistently announce that worker's compensation was a form of industrial accident insurance. Through the majority opinion, the court is now saying that the validity of the insurance contract is contingent on the employee agreeing not to sue a co-employee except for culpable negligence. For me, it is a holding not supported by the law and in derogation of the limitations on legislative power found in Art. 10, § 4.

The purpose of worker's compensation in Wyoming was to provide the worker or his

family with speedy and adequate relief for injury or death, all without respect to any but culpable negligence on the part of the worker, in return for which he or she agrees to relinquish all rights of action against the employer who contributes to the fund in his or her behalf. The system was not designed to preclude the worker from pursuing his or her common-law remedies against negligent third parties—including negligent co-employees. The amendment clearly limited the power of the legislature to create a system of direct compensation between the employee and contributing employer whereby it was envisioned that the only sacrifice which the employee was called upon to make was the giving up of his or her rights of action against contributing employers. No power exists for the extension of immunity to co-employees under Art. 10, § 4.

I would have held that § 27–12–103 violates the proscriptions of Art. 10, § 4, and, therefore, I would have affirmed.