*366 MR. JUSTICE MORRISON
delivered the opinion of the Court.
The State of Montana appeals from a summary judgment entered by the District Court of the Eighth Judicial District, Cascade County, which found section 2-9-104, MCA, limitation on governmental liability for damages in tort, and section 2-9-105, MCA, providing for state immunity from exemplary and punitive damages, both to be unconstitutional.
Plaintiff filed an action seeking damages for personal injury alleging negligence on the part of defendant State of Montana. The State filed an answer alleging that the government was immune from liability for noneconomic damages and for punitive damages. Plaintiff moved the court for summary judgment on these defenses, claiming the limitations found in the State Tort Claims Act are unconstitutional and void.
Plaintiff Karla White intends to prove that as a result of the reckless conduct of the State of Montana, she was attacked by a violent and dangerous criminal, and that as a result, she has sustained severe emotional injuries which will significantly affect her ability to live a happy and fulfilling life, although her demonstrable economic losses will be relatively insignificant. The allegation of gross negligence against the State of Montana is premised upon the State permitting the allegedly violent and dangerous person to escape from the mental hospital at Warm Springs and remain free for a period of five years without serious attempts to locate and reincarcerate this individual. Plaintiff was attacked in Great Falls, Montana, approximately five years after the inmate escaped from Warm Springs.
We find the following issues to be dispositive:
1. Do the limitations on recovery against the State of Montana as provided for in section 2-9-104, MCA, violate constitutional guarantees of equal protection?
2. Does the prohibition against exemplary and punitive damage assessments as provided for in section 2-9-105, *367 MCA, violate constitutional guarantees of equal protection and due process?
DOES SECTION 2-9-104, VIOLATE CONSTITUTIONAL GUARANTEES OF EQUAL PROTECTION?
Section 2-9-104, MCA, provides as follows:
“(1) Neither the state, a county, municipality, taxing district, nor any other political subdivision of the state is liable in tort action for:
“(a) noneconomic damages; or
“(b) economic damages suffered as a result of an act or omission of an officer, agent, or employee of that entity in excess of $300,000, for each claimant and $1 million dollars for each occurrence.
“(2) The legislature or the governing body of a county, municipality, taxing district, or other political subdivision of the state may, in its sole discretion, authorize payments for noneconomic damages or economic damages in excess of the sum authorized in subsection (1) (b) of this section, or both, upon petition of plaintiff following a final judgment. No insurer is liable for such noneconomic damages or excess economic damages unless such insurer specifically agrees by written endorsement to provide coverage to the governmental agency involved in amounts in excess of the limitation stated in this section or specifically agrees to provide coverage for noneconomic damages, in which case the insurer may not claim the benefits of the limitation specifically waived.”
Plaintiff attacks section 2-9-104(1), MCA, by arguing it violates equal protection by classifying people in three different ways:
1. It classifies victims of negligence who have sustained noneconomic damage by whether they have been injured by a nongovernment tort-feasor or a government tort-feasor. It totally denies any recovery to the latter class.
2. It classifies victims of government tort-feasors by whether they have suffered economic damages or *368 noneconomic damages. It allows recovery to the former group up to $300,000 while it totally denies recovery to the latter group.
3. It classifies victims of government tort-feasors by the severity of the victims’ injuries. It grants recovery to those victims who have not sustained significant injury by allowing them to recover up to $300,000 in economic damages. It discriminates against the seriously injured victims by denying recovery for any injuries over $300,000.
The constitutional guarantee of equal protection requires all persons to be treated alike under like circumstances. U.S. Const., Amend. XIV, Section 1; 1972 Mont.Const., Art. II, Section 4. If a statute affects a “fundamental right,” it must be measured by a strict scrutiny test. Dunn v. Blumstein (1972), 405 U.S. 330, 92 S.Ct. 995, 1002, 31 L.Ed.2d 274, 284; Shapiro v. Thompson (1969), 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600; Matter of Estate of Merkel (1980), Mont., 618 P.2d 872, 37 St.Rep. 1782. Application of this test requires that the statutory scheme be found unconstitutional unless the State can demonstrate that such law is necessary “to promote a compelling government interest.” Dunn v. Blumstein, supra.
The State argues that the right to bring a civil action for personal injuries is not a fundamental right and that the statutory scheme must be judged by the less burdensome rational basis test. We reject the State’s argument and adopt that of the plaintiff.
Article II, section 16 of the Montana Constitution guarantees that all persons shall have a “speedy remedy . . . for every injury of person, property, or character.” In Corrigan v. Janney, (1981), Mont., 626 P.2d 838, 38 St.Rep. 545, this Court held that it is “patently unconstitutional” for the legislature to pass a statute which denies a certain class of Montana citizens their causes of action for personal injury and wrongful death. We affirm and refine our holding in Corrigan v. Janney, supra; we hold that the Montana Constitution guarantees that all persons have a speedy remedy *369 for every injury. The language “every injury” embraces all recognized compensable components of injury, including the right to be compensated for physical pain and mental anguish and the loss of enjoyment of living. Therefore, strict scrutiny attaches.
The State argues that it has shown a compelling state interest in “insuring that sufficient public funds will be available to enable the State and local governments to provide those services which they believe benefit their citizens and which their citizens demand.” The State further argues that the government has to engage in a wide variety of activities, some of which are extremely dangerous and not confronted by private industry. The District Court found that, “this ‘bare assertion,’ however, ‘falls far short of justifying’ a discrimination which infringes upon fundamental rights.” We agree.
The government has a valid interest in protecting its treasury. However, payment of tort judgments is simply a cost of doing business. There is no evidence in the record that the payment of such claims would impair the State’s ability to function as a governmental entity or create a financial crisis. In fact, the State of Montana does have an interest in affording fair and reasonable compensation to citizens victimized by the negligence of the State. Therefore, the strict scrutiny test mandated by the implication of a fundamental right has not been satisfied and the statute prohibiting recovery for noneconomic damage is unconstitutional under the Montana State Constitution.
We recognize that some limit on the State’s liability may comport with the constitutional guarantees of equal protection. However, such a limitation cannot discriminate between those who suffer pain and loss of life quality and those who primarily suffer economically.
We are left, in reviewing the constitutionality of section 2-9-104, MCA, with the question of whether the limitation on economic damages of $300,000 for each claimant and $1,000,000 for each occurrence is constitutional. If we *370 were to leave intact that portion of section 2-9-104, MCA, which limits economic damages to the sum of $300,000 for each claimant and one million dollars for each occurrence, we would then be left with a situation where recovery for pain and suffering was unlimited and recovery for economic damages was limited as prescribed by the statute. New discrimination problems would then exist; those whose primary loss was intangible could recover without limit but those who suffer tangible losses would be limited. Furthermore, at this point the state has failed to demonstrate a compelling state interest which would justify any limitation. We therefore declare section 2-9-104, MCA, in its entirety, to be unconstitutional.
DOES THE PROHIBITION AGAINST EXEMPLARY AND PUNITIVE DAMAGES FOUND IN SECTION 2-9-105, MCA, VIOLATE EQUAL PROTECTION?
The punitive damage question is different from the issue of limiting compensatory damages. Plaintiff has a constitutional right to redress for all of her injuries but she does not have a constitutional right to recover punitive damages. In reviewing the constitutionality of a statute immunizing the State from punitive damage assessments, we apply the “rational basis” test rather than the “strict scrutiny” test.
There exists a rational basis for distinguishing governmental entities from others in the application of punitive or exemplary damage law. The primary purpose of assessing punitives is to punish the wrongdoer and through that punishment, deter future unlawful conduct of the tortfeasor and others who might be inclined to engage in like conduct. The problem with assessing punitive damages against the government is that the deterrent effect is extremely remote and innocent taxpayers are, in fact, the ones punished. Those taxpayers have little or no control over the actions of the guilty tort-feasor.
This problem was addressed by the United States Su *371 preme Court in City of Newport v. Fact Concerts, Inc. (1981), 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616, wherein the Court stated:
“Punitive damages by definition are not intended to compensate the injured party, but rather to punish the tortfeasor whose wrongful action was intentional or malicious, and to deter him and others from similar extreme conduct. See Restatement (Second) of Torts, § 908 (1979); W. Prosser, Handbook of the Law of Torts 9-10 (4th ed. 1971). Regarding retribution, it remains true that an award of punitive damages against a municipality ‘punishes’ only the taxpayers, who took no part in the commission of the tort. These damages are assessed over and above the amount necessary to compensate the injured party. Thus, there is no question here of equitably distributing the losses resulting from official misconduct. Cf. Owen v. City of Independence, 445 U.S., [622] at 657, 100 S.Ct., [1398] at 1418 [63 L.Ed.2d 673]. Indeed, punitive damages imposed on a municipality are in effect a windfall to a fully compensated plaintiff, and are likely accompanied by an increase in taxes or a reduction of public services for the citizens footing the bill. Neither reason nor justice suggest that such retribution should be visited upon the shoulders of blameless or unknowing taxpayers.” 453 U.S. at 266-67, 101 S.Ct. at 2759-60, 69 L.Ed.2d at 632.
We find that section 2-9-105, MCA, constitutionally creates immunity from punitive damage assessments for governmental entities.
Amicus curiae has presented the issue of whether the limitations set forth in section 2-9-104, MCA, are unconstitutional in that the limitations were not voted upon by the people but were adopted by the legislature. Amicus argues that, by adopting the limitations the legislature amended the constitution. We find this argument interesting but not dispositive in light of our holding that the questioned section violates equal protection of law.
The judgment of the District Court finding section 2-9- *372 104, MCA, unconstitutional is affirmed. The judgment of the District Court finding section 2-9-105, MCA, unconstitutional is vacated.
We remand this case for trial to be conducted in conformity with the views herein expressed.
MR. JUSTICES HARRISON, SHEA and SHEEHY concur.