MR. JUSTICE MORRISON,
specially concurring:
I unequivocally concur in the constitutional analysis engaged by my learned brother, Justice John C. Sheehy, speaking for the majority. This specially concurring opinion is written for the purpose of addressing the dissents of Mr. Chief Justice J. A. Turnage and Mr. Justice Fred J. Weber.
The Chief Justice has filed a dissent in which he states:
*224 “The majority opinion centers upon Article II, Section 16, of the 1972 Montana Constitution ...”
The Chief Justice’s dissent fails to grasp the constitutional issue in this case and therefore proceeds upon a faulty premise. The issue is whether the statute in question offends Art. II, Sec. 4, of our State Constitution which provides in part that “no person shall be denied the equal protection of the laws.”
Had the courthouse door been completely closed to Pfost, then Art. II, Sec. 16, which forms the core of the Chief Justice’s dissent, would likely be addressed rather than equal protection. The statute here in question does not institute a State immunity but rather provides a scheme for compensating litigants where a limited recovery of $300,000 is afforded. Pfost argues that such a scheme discriminates against him and denies equal protection of the law. Pfost’s argument has not been addressed by the Chief Justice’s dissent.
The first step in properly analyzing the Pfost claim is to determine whether the legislation discriminates. Pfost argues that people with claims worth less than $300,000 are fully compensated but under the statutory limitation he receives practically nothing. Pfost is a quadriplegic. The $300,000 limitation will not pay the medical expenses for his lifetime. The result of the limitation is that Pfost will receive nothing for loss of income, destruction of his established course of life, or for physical pain and mental anguish.
The statute is facially neutral in that every one receives the same treatment. All tort victims are limited to $300,000 in claims against the State of Montana. However, the statute does have a disparate impact upon people such as Pfost who suffered catastrophic injuries. The tort victim who fractures a leg receives full compensation. On the other hand a quadriplegic, under the limitation imposed, would not recoup medical expenses and would be denied any compensation for the other aspects of injury.
In view of the disparate impact suffered by catastrophically injured tort victims, it seems clear that Pfost, and those similarly situated, suffer discrimination under the State limitation. However, discrimination in this case is not per se unconstitutional. The next step in equal protection analysis is to determine whether the discriminatory legislation can be sanctioned without denying equal protection of the law as it is guaranteed under our state constitution. In making that determination, we must decide what level of scrutiny attaches.
Equal protection analysis is usually accomplished by appellate courts through judging the legislative classifications using “rationale *225 basis” or “strict scrutiny.” Some courts have engaged a middle tier analysis. In this case we have adopted the “strict scrutiny” test for the reason that a fundamental right is implicated in imposing a $300,000 limitation.
There is no claim in this case that the $300,000 limitation imposed by the legislature violates Art. II, Sec. 16, of the State Constitution. For that reason the dissent filed by the Chief Justice just misses the mark.
The only relevance of Art. II, Sec. 16, is in determining what level of scrutiny to attach in making an equal protection analysis. We must determine whether the $300,000 limitation infringes upon rights addressed in Art. II, Sec. 16. If so, then in making an equal protection analysis, strict scrutiny attaches and the State must show a compelling State interest in justification of the limitation.
In White v. State of Montana (Mont. 1983), [203 Mont. 262,] 661 P.2d 1272, 40 St.Rep. 507, this court held that Art. II, Sec. 16, afforded redress for all aspects of injury including pain and suffering and that the State Tort Claims Law, which denied compensation for pain and suffering, would be subjected to a strict scrutiny analysis.
Art. II, Sec. 16, provides in relevant part as follows:
“Courts of justice shall be open to every person, and speedy remedy afforded for every injury of person, property, or character. No person shall be deprived of this full legal redress . . .”
In White we determined that the language “every injury” included pain and suffering and that by denying any compensation for pain and suffering the State would be required to show there was a compelling State interest to justify the denial. In this case, at least arguably, there is some compensation for every injury. On the face of the statute one can recover for all legally cognizable elements of damage but there is a $300,000 cap. The majority has attempted to determine whether such a limitation affords a speedy remedy for every injury as that language was intended in Art. II, Sec. 16. We looked to the next sentence in the section which commences “no person shall be deprived of this full legal redress ...” The word “this” clearly refers to an antecedent. When the language of the section is construed harmoniously, it appears clear that the constitutional delegates intended that “remedy afforded for every injury” provides for full legal redress. That intent is made abundantly clear by the language of delegate DaHood quoted in the Chief Justice’s dissent. DaHood said:
“We say, in the first sentence, that every citizen shall have the *226 right to full legal redress.” Montana Constitutional Convention Transcript, Vol. V at 1757.
The first sentence of Section 16 does not specifically state that full legal redress is aiforded, but the language found in the next sentence, shows the full breath of the first sentence’s command.
Once we have determined that the $300,000 limitation discriminates against a class including the claimant Pfost and that , such discrimination implicates a fundamental right found in Art. II, Sec. 16, we then require the State to justify the limitation by showing a compelling State interest. In White v. State, supra, we clearly stated that saving money did not constitute a compelling State interest. As in White, no compelling State interest has here been shown. Therefore, the statute in question fails to pass constitutional muster and must be stricken. The Chief Justice, in not addressing the equal protection issue, leaves us in the dark about whether he would apply a rational basis test or a middle tier analysis. He does not say if the present statute would pass either test, and if so, why.
Justice Weber argues that Art. II, Sec. 18, has application in this case. That section states:
“State subject to suit. The State, counties, cities, towns, and all other local governmental entities shall have no immunity from suit for injury to a person or property, except as may be specially provided by law by a two thirds vote of each house of the legislature.”
Under this provision of the Constitution, the legislature is authorized to enact State immunity by a two thirds vote. Of course, the legislature could do that anyway. The legislature could immunize any person or group of people from tort liability. The only significance of this constitutional provision is that it requires a two thirds vote instead of a majority vote in order to immunize the State of Montana from liability.
Where Justice Weber’s dissent goes astray is in failing to consider that any legislation passed by the legislature must be subjected to the other provisions of the Constitution. Certainly the legislation itself does not become a part of the Constitution and therefore cannot be balanced against other constitutional provisions. If the legislation passed by the legislature violates the equal protection clause of the Constitution, it still must be stricken.
I believe the majority opinion is scholarly and constitutionally sound. However, that opinion was drafted prior to the drafting of the dissents. The purpose of this concurring opinion is to show the *227 weaknesses in the dissents and reinforce the lucid analysis found in the majority opinion.