MR. CHIEF JUSTICE TURNAGE,
dissenting:
I dissent to the majority opinion. I would hold that Section 2-9-107, MCA, is constitutional and reverse the District Court.
The majority opinion centers upon Article II, Section 16, of the 1972 Montana Constitution and its application as articulated in White v. State of Montana (Mont. 1983), [203 Mont. 363,] 661 P.2d 1272, 40 St.Rep. 507.
This Court should reexamine its interpretation of Article II, Section 16.
Montana’s 1889 Constitution, Article III, Section 6, provided:
“Courts of justice shall be open to every person, and a speedy remedy afforded for every injury of person, property, or character; and that right and justice shall be administered without sale, denial, or delay.”
Montana’s 1972 Constitution, Article II, Section 16, provides:
“Courts of justice shall be open to every person, and speedy remedy afforded for every injury of person, property, or character. No person shall be deprived of this full legal redress for injury incurred in employment for which another person may be liable except as to fellow employees and his immediate employer who hired him if such immediate employer provides coverage under the Workmen’s Compensation Laws of this state. Right and justice shall be administered without sale, denial, or delay.”
The first and third sentence of Article II, Section 16, with the exception of the omission of the adjective “a” in the first sentence, are identical to the 1889 Constitution, Article III, Section 6. The drafters of the 1972 Constitution added only the second sentence of Article II, Section 16:
“No person shall be deprived of this full legal redress for injury incurred in employment for which another person may be liable except as to fellow employees and his immediate employer who hired him if such immediate employer provides coverage under the Workmen’s Compensation Laws of this state.”
A careful examination into the intent of the drafters of the 1972 Constitution is essential and critical to this Court’s correct interpretation of the second sentence of Article II, Section 16. Evidence of their intent is to be found in official proceedings of the Constitutional Convention.
*228 The second sentence of Article II, Section 16, first appeared at the 1972 Constitutional Convention as delegate proposal 133 introduced February 3, 1972, and now appears verbatim as introduced in our Constitution. The proceedings of the delegates to the 1972 Constitutional Convention relating to the amendment of the Article III, Section 6, of the 1889 Constitution by the addition of the second sentence in what is now Article II, Section 16, clearly establishes that the delegates had a singular and sole purpose in this regard: To assure that no person shall be deprived of full legal redress for injury incurred in employment for which another person may be liable.
Examination of the proceedings of the Montana Constitutional Convention from January 17, 1972, to March 24, 1972, leaves no doubt as to the delegates’ purpose and intent in Article II, Section 16, nor does the plain language of this Article and Section.
On February 22, 1972, the Bill of Rights Committee submitted a committee report with these comments:
“The committee voted unanimously to retain this section with one addition. The provision as it stands in the present Constitution guarantees justice and a speedy remedy for all without sale, denial or delay. The committee felt, in light of a recent interpretation of the Workmen’s Compensation Law, that this remedy needed to be explicitly guaranteed to persons who may be employed by one covered by Workmen’s Compensation to work on the facilities of another. Under Montana law, as announced in the recent decision of Ashcraft v. Montana Power Co., [156 Mont. 368, 480 P.2d 812] the employee has no redress against third parties for injuries caused by them if his immediate employer is covered under the Workmen’s Compensation Law. The committee feels that this violates the spirit of the guarantee of a speedy remedy for all injuries of person, property or character. It is this specific denial — and this one only — that the committee intends to alter with the following additional wording: ‘No person shall be deprived of this full legal redress for injury incurred in employment for which another person may be liable except as to fellow employees and his immediate employer who hired him if such immediate employer provides coverage under the Workmen’s Compensation Laws of this state.’ In other words the committee wants to insure that the Workmen’s Compensation Laws of the state will be used for their original purpose — to provide compensation to injured workmen — rather than to deprive an injured worker of redress against negligent third parties (beyond his employer and fellow employees) because his immediate employer is *229 covered by Workmen’s Compensation. The committee believes that clarifying this remedy would have a salutary effect on the conscientiousness of persons who may contract out work to be done on their premises. To permit no remedy against third parties in cases where the employer is covered by Workmen’s Compensation is to encourage persons with rundown premises to contract out work without improving the quality of the premises. The committee urges that this is an abuse of the Workmen’s Compensation Law and constitutes a misapplication of that law to protect persons who are negligent.
“The committee commends this provision to the convention with the belief that it is an important, if technical, aspect of the administration of justice.” Montana Constitutional Convention, Vol. .II, at 636-637.
On March 8, 1972, the Convention resolved itself into a Committee of the Whole and delegate Murray in recommending Section 16 of Article II stated:
“DELEGATE MURRAY: [After reading the entirety of the above committee report.] Those are the remarks which are contained in the booklet. Let me amplify them by saying basically this: we feel that the right to third party action is a right which we should establish in our Constitution. It is a right which working men and women who are unfortunate enough to be injured have had for nearly 80 years in this state. We feel that it was wrongly taken away from these people by the Supreme Court decision which was mentioned. We feel that we perhaps are legislating in asking that this be written into our Constitution, but we of the committee really believe that we are acting in a judicial manner in asking that it be written in the Constitution for we feel that this Convention, perhaps, is the court of last resort for injured working men and women in Montana with respect to the third party lawsuit, and we recommend that the section be adopted.
“CHAIRMAN GRAYBILL: Mrs. Bowman.
“DELEGATE BOWMAN: Mr. Chairman, I wonder if Mr. Murray would yield to a question.
“CHAIRMAN GRAYBILL: Mr. Murray, will you yield?
“DELEGATE MURRAY: Yes, Mr. Chairman.
“DELEGATE BOWMAN: Mr. Murray, I don’t understand what this means and I wonder if you would explain it, giving us a specific example of what happened so we’d know that you’re talking about.
“DELEGATE MURRAY: Mrs. Bowman, in the case in question, *230 the — one of the important utilities in this state hired a contractor to repair some of its powerlines and the employee of the contractor that was hired crawled up a power pole and, while there working on that pole, it broke and it fell with him to the ground and he was injured. In the case in question, because of the decision of the Supreme Court, the injured employee was limited to Workmen’s Compensation benefits through the coverage of the contractor. Ordinarily, if it were not for this interpretation, the injured employee would be entitled to sue the important utility in this state and recover in addition to his Workmen’s Compensation benefits. Those benefits or a portion of those benefits recovered under Workmen’s Compensation, were the injured workman — did he — or were he to make a recovery against the important utility, would be paid back under the theory of subrogation to the Industrial Accident Fund of Montana. But does that explain basically what occurred, at least in this one instance?” Montana Constitutional Convention, Vol. V, at 1753-1754.
Delegate Dahood stated:
“DELEGATE DAHOOD: Mr. Chairman, I had intended not to speak on this particular section simply because I was trial counsel on behalf of Charles Ashcraft, who is permanently disabled for the rest of his life and shall never work at his trade. I have heard this argument in the Supreme Court, an argument that had no basis in logic. I have heard it by several defense counsel who represent the best of corporate interests, that this is going to affect the individual property owner, and if he hires a contractor, he is going to be exposed to a liability that is unprecedented and they did not experience before. This is totally untrue. This section is doing nothing more, and the wording has been very precisely selected to make sure that it does nothing more, than place the injured working man back in the status that he enjoyed prior to 1971, a very basic constitutional right which he enjoyed for 80 years in the State of Montana. What happened in the Ashcraft case? The Montana Trial Lawyers Association, 150 members strong, to a man, without a dissent, believes that this Constitutional Convention must return this right to the injured working man. The unions, without exception, believe that a very basic right has been taken away from the injured working man in the State of Montana, and I understand that the corporate interest that specifically are involved in this have decided that they will not ask anyone to offer opposition to it on the Convention floor. Here is what happened in the Ashcraft case. Charles Ashcraft *231 worked for an independent contractor having no connection with the Montana Power Company. The Montana Power Company made what we call an independent contract to have a new phase placed upon their power poles. Charles Ashcraft went 35 feet into the air. He was there for 20 minutes. Without warning, without any chance to protect himself, that pole gave way below ground level and carried Charles Ashcraft 35 feet to the ground. He was 90-some days in the hospital, but he survived; but he will not work at his trade again. What were the real facts? And keep this in mind: we are only talking about a situation where someone, through negligence, through a failure to use due care, has brought about the injury. There is nothing automatic. You may still suffer injury that is not fault of anyone else — not recover. We are not talking about that. So what were the facts? Dr. Clancy Gordon, one of the environmental advocates, was retained by us. He is a professor of botany at University of Montana. He examined the pole and found several apparent things about it. One, it violated the statute of the State of Montana that’s been on the statute books for more than 50 years, that power companies must construct their poles of cedar-quality or other standardized material. This was a lodgepole pine; it was not as required by statute. This was a lodgepole pine that has a useful life of from 17 to 20 years at the most. This pole had been in place for more than 23 years and had not been inspected for more than 5 years before the accident occurred. As a consequence, the rotting that took place took place below the ground level where the lineman, before climbing the pole, could not detect it, even though in this instance Charles Ashcraft did what he was trained to do — took a shovel and dug around the base of the pole. And as a consequence, through the negligence of the Montana Power Company, he suffered this permanent injury. Up until this decision by the Supreme Court, there was no question that in that situation the injured citizen, the injured working man had a right for proper redress.
“The Workmen’s Compensation law, which is inadequate at best, has certain public reasons for its existence. It applies only between the employer and the employee. So clever legal counsel for the Montana Power Company, and very able, decided maybe there’s some way to get away from this case. So they went back to 1965, when the Legislature amended the independent contractor law to provide that you no longer could defend on the ground that someone injured within your work premises was not entitled to Workmen’s Compensation from you because he was employed by an independent con *232 tractor unless you insisted that that independent contractor carry Workmen’s Compensation. The legislators that were behind that amendment were interviewed. They said, ‘We had no intention whatsoever of bringing about the results that were brought about by this Supreme Court decision, and you have to strain the reading of that particular section to come up with that particular position.’ But nevertheless, the Supreme Court — and there’s a very bitter dissent on that case — a long and well-reasoned dissent — but in any event, in that case they fastened upon that as a justification and an excuse for denying this working man his remedy. When that happened — and this was after Judge Battin of the Federal Court in a similar case had ruled in Montana that this amendment does not do that — he then had to change his mind, because under federal law, he’s bound by a Montana decision. The legal community was shocked. None of us were able to explain the result to the unions, to the working people. This particular right was taken away from the working man after 80 years, so promptly legislators introduced in the Senate a bill to overcome that. It passed the Senate — and I don’t want to make a bicameral or a unicameral argument here. (Laughter) Promptly the lobby of the vested corporate interests when [sic] across the hall-and we determined this to be true — and made sure that it did not pass in the House.
“So we’re now at the court of last resort. We allowed in our Bill of Rights an amendment to a clean and healthy environment. By this provision and this amendment, we are going to provide for the working man a safe environment. How does the law stand at the moment? Let me tell you how it stands. And some of the big vested corporate interests are now using independent contractors because it’s reduced their cost of operation. If you have some particular tough job that you want done on your premises where there may be some danger connected with it, what you do, you go out and you hire an independent contractor. Don’t have your employees in that dangerous area, because if they’re hurt or there’s an accident, you have to pay them Workmen’s Compensation. So here’s the way you do it now that we have immunity from the Supreme Court — an immunity neither intended by the people nor intended by the Legislature. What you do, you hire someone on an independent contractor basis and their employees are in this dangerous area. You don’t have to worry about safety anymore. You don’t have to do anything to make your premises safe. You don’t have to be concerned about a safe environment for the people that are working there to benefit *233 your interest. If they’re injured, even though it’s the most blatant type of negligence and carelessness, all you have to say is, ‘Well, we’re sorry, but you have your Workmen’s Compensation.’ Maybe you have a wife and seven children, but it’s $65 a week for awhile and it’s 60, and now, of course, the Legislature has raised it and you can get more money, but that’s it. The Workmen’s Compensation people were astounded at the decision. They sent their lawyers up to petition for rehearing. I do not think that any strong legal mind could really and truly justify what had happened, which has resulted in this, that in a particular area of industry now we need not have a safe environment for the working man. The vested corporate interest has immunity without paying anything for it. Now, how does it work if we return this basic right that the injured working man had for 80 years? Simply this. Let’s assume — let’s take the Charles Ashcraft situation. Charles Ashcraft is injured. He proves all these factors about the negligence of the Montana Power Company. He is paid his Workmen’s Compensation, so he files what the lawyers call a third party lawsuit. The Montana Power Company then is compelled to acknowledge its obligation. They make payment. He then pays back to the Workmen’s Compensation carrier. We have a provision in Montana in the Workmen’s Compensation Law that provides for these actions — that the working man doesn’t bring it, the Industrial Accident Board does. That law has never been changed. But how about now? That law is almost useless because of this particular interpretation. So what has happened? Regardless of all this conflict, this technicality, having to use the word “Workmen’s Compensation” in this particular section, which we didn’t want to do, because the minute we did it we knew that somebody would jump up and say it’s legislative, but if you’re going to draft something with precision and you want to make sure that all that you’re doing is returning the law to what it was prior to this decision a year ago, you are compelled, sometimes, in fashioning this precise language to use language that may be seized upon by someone else as legislative. It is not. It is giving back a basic constitutional right that the citizens of Montana had prior to that particular decision. And we submit to you that by this particular provision, all that we are doing is returning that right to the working man; and how can anyone truly, justly object to doing that and only that? Now that is what happened in that particular situation. This is a constitutional provision. We say, in the first sentence, that every citizen shall have the right to full legal redress. We’ve taken away full legal redress in that par *234 ticular area. We want to give full legal redress back in that one specific area, and that is why it is framed in that particular fashion. And we submit to you, our fellow delegates, that we are here to make sure that the rights of the citizen are protected, and this is nothing more than a step forward to make sure that they will continue to have a protection that existed for 80 years. We submit it’s a constitutional matter and that the amendment is required to have a progressive Bill of Rights. Thank you, Mr. Chairman.” Montana Constitutional Convention, Vol. V, at 1755-1757.
Delegate Johnson then inquired of Delegate Dahood:
“DELEGATE JOHNSON: Wade, I’m a cattle rancher down in southeastern Montana and we live way back in the hills, off the road. We have to maintain our own road; in fact, it’s 12 miles there. We built what kind of a road we have, and we try to get by on it. We have some homemade bridges there, and this and that. As a point of clarification, I wanted to ask you, where we would contract somebody to do some work on this road and perhaps one of them with a piece of heavy equipment were doing some shaling or graveling of this or that and one of these bridges would collapse and one of those men would be hurt, then I would be responsible?
“DELEGATE DAHOOD: Torrey you would not be responsible. This amendment does nothing more than return the law to what it was about a year ago. Please recall what I said. The only time that someone would be responsible, such as the Montana Power Company, is when they are negligent, they are guilty of some type of civil wrongdoing. And this other argument that’s been used, that it’s going to open you up or it’s going to open the owner of a residence up to some type of lawsuit, is simply, absolutely not true. That’s why we fashioned this language precisely as we have. We’re doing nothing more than trying to return the law to what it was prior to a year ago. Your situation would be no different than it’s been in all the years gone by, Torrey.” Montana Constitutional Convention, Vol. V, at 1758.
In the clear and bright light of this record, there should be no reason for disagreement on what the intention of the Constitutional Convention delegates was and what they had in mind when they adopted Article II, Section 16, or what the citizens understood when they voted upon this provision.
The majority opinion in its interpretation of Article II, Section 18, of the Montana Constitution and of Section 2-9-107, MCA, raises other, and perhaps more serious, constitutional questions.
*235 What political power do the people have to amend their Constitution? What standing with relation to other constitutional articles does a subsequent constitutional amendment have? What power do the people have to respond to any amendment through their Legislature?
Article II, Section 1, provides:
“All political power is vested in and derived from the people. All government of right originates with the people, is founded upon their will only, and is instituted solely for the good of the whole.”
Article II, Section 2, provides:
“The people have the exclusive right of governing themselves as a free, sovereign, and independent state. They may alter or abolish the constitution and form of government whenever they deem it necessary.”
Article III, Section 1, provides:
“The power of the government of this state is divided into three distinct branches — legislative, executive, and judicial. No person or persons charged with the exercise of power properly belonging to one branch shall exercise any power properly belonging to either of the others except as in this constitution expressly directed or permitted.”
The 1972 Constitution, when adopted by the people, was an amendment to their 1889 Constitution, and there should be no dispute that amendments to the Constitution must and do have a direct effect upon any prior existing Article of the Constitution which the amendment has an obvious and intended purpose in addressing. To hold otherwise may render any attempt by the people to amend their Constitution a nullity.
In a given factual context, each Article of our Constitution must have equal and recognized standing. If such were not the case, and the document not read to harmonize each of its provisions, interpretive chaos may well result.
Amendments amend amendments and this must be recognized by the Court.
The original Article II, Section 18, of the 1972 Constitution provided:
“The state, counties, cities, towns and all other local governmental entities shall have no immunity from suit for injury to a person or property. This provision shall apply only to causes of action arising after July 1, 1973.”
An amendment to this Section was presented to the people by leg *236 islative referendum and in 1974 the people amended Article II, Section 18, which now provides:
“The state, counties, cities, towns, and all other local governmental entities shall have no immunity from suit for injury to a person or property, except as may be specifically provided by law by a Vz vote of each house of the legislature.”
In 1983, the legislature in response to this Court’s decision in White, adopted Section 2-9-107, MCA:
“(1) Neither the state, a county, municipality, taxing district, nor any other political subdivision of the state is liable in tort action for damages suffered as a result of an act or omission of an officer, agent or employee of that entity in excess of $300,000 for each claim and $1 million for each occurrence.
“(2) No insurer is liable for excess damages unless such insurer specifically agrees by written endorsement to provide coverage to the governmental agency involved in amounts in excess of a limitation stated in this section, in which case the insurer may not claim the benefits of the limitation specifically waived.”
The majority of this Court now finds this statute invalid and unconstitutional in failing to meet a test of rationality or compelling State interest, and therefor discriminatory, and therefor a denial of equal protection under Article II, Section 4, of the Montana Constitution.
I believe Section 2-9-107, MCA, meets the test of rationality and compelling State interest.
The majority opinion sets forth in full the provisions of Section 2-9-106, MCA, which will not be repeated here, but I commend the reader to further consider its provisions. They are not mere bare assertions or only a legislative plea not to require government to provide funds. They are carefully considered and articulated reasons why government of the people must be protected from unlimited liability.
The result of the majority opinion not only affects the State government, which arguably may have a deep pocket, but every County, City, School District, Irrigation District, Fire District, and many other small governmental entities as well, which unarguably do not have a deep pocket. It is the people of this State, not government, who bear the cost of government, which of course is extracted from them by taxes and fees.
When the people in 1974 adopted Article II, Section 18, they authorized the legislature to specifically provide immunity from suit to *237 governmental entities for injury to persons or property. This is precisely what the legislature has done in 1983 by passing Section 2-9-107, MCA. They did not provide for total immunity but specifically limited damages as to amount. Legal redress for injury to person or property can only be measured in money damages. Article II, Section 18, authorized the legislature to provide for this limited immunity.
The majority opinion cites White and Article II, Section 16, for the proposition that there is a fundamental right to full legal redress under the facts of this case.
A grammatical reading of Article II, Section 16, does not support this interpretation.
The clear intent of the 1972 delegates to the Constitutional Convention does not support this interpretation.
In adopting the second sentence of Article II, Section 16, they intended and did provide full legal redress for injury incurred in employment for which others may be liable, except as to fellow employees and the immediate employer. There is no question as to the need for this protection for the employees in this State.
There further can be no question that our courts are open to every person and speedy remedy afforded for every injury of person, property or character; however, this does not mean that the people have been denied the right to act through their legislature in providing a system of law that may set forth the scope and extent of the remedies provided by law. For this Court to decide otherwise requires a denial of the doctrine of separation of powers in Article III, Section 1, of the Montana Constitution.
This Court should reexamine its interpretation of Article II, Section 16, articulated in White and the cases controlled by that decision.