Earnest L. TROYER and Charlyne Troyer, Appellants (Plaintiffs),

v.

STATE of Wyoming, DEPARTMENT OF HEALTH AND SOCIAL SERVICES, DIVISION OF VOCATIONAL REHABILITATION, Appellees (Defendants),

Welding & Machine, Inc., Charles W. Emswiler, Dutton-Lainson, a Nebraska corporation (Defendants).

No. 86–17.

Supreme Court of Wyoming.

July 14, 1986.

John E. Stanfield (argued), Smith, Stanfield & Scott, Laramie, John B. Speight, Hathaway, Speight & Kunz, Cheyenne, for appellants.

Bruce A. Salzburg (argued), Freudenthal, Salzburg & Bonds, Laramie, for appellees.

Before THOMAS, C.J., and BROWN, CARDINE and URBIGKIT, JJ., and GUTHRIE, J., Retired.

CARDINE, Justice.

Appellant Ernest Troyer, a victim of multiple sclerosis, suffered back injuries when an elevator in his home malfunctioned. He brought suit against the seller of the elevator, the manufacturer of the component part which failed, and the Division of Vocational Rehabilitation of the Wyoming Department of Health and Social Services (division), which had procured and inspected the elevator on appellant's behalf. The district court granted the division's motion to dismiss with prejudice on grounds that the claim was barred by the Wyoming Governmental Claims Act (Claims Act). We must decide whether the "health care provider" exception to the Claims Act permits the claim against the division and in the alternative whether the Claims Act is unconstitutional under several provisions of the Wyoming and United States constitutions.

## FACTS

Since this is an appeal from a dismissal on the pleadings, we must accept the allegations in the amended complaint as true. *Gates v. Richardson*, Wyo., 719 P.2d 193 (1986). According to the amended complaint, appellant entered into a program with the Division of Vocational Rehabilitation to assist him in his saw-sharpening business. It was difficult for appellant to go from his garage to his workshop in a wheelchair because the garage was situated above the workshop. The division, therefore, agreed to help him select, install and finance an elevator.

The division insisted that appellant solicit bids; and he did so, receiving them from both the Otis Elevator and Montgomery Elevator companies. But, because these bids exceeded budget limitations, the division asked appellant to get a third bid; and he complied. This bid, from Charles W. Emswiler and Welding & Machine, Inc. (Emswiler), was lower than the other two; and the division accepted it.

In the process of constructing the elevator, Emswiler selected and installed a Strongarm Electric Winch, manufactured by the Dutton-Lainson Company. The winch contained a warning label which stated: "CAUTION 1. NOT FOR MOVING HUMANS. NEVER USE IN APPLICATION WHERE PERSONS WOULD BE POSITIONED ON OR UNDER THE LOAD." Emswiler cut off the warning label and ignored it. The division paid Emswiler for the elevator after a division representative inspected it.

On July 17, 1984, when appellant was sitting in his wheelchair in the elevator, the winch failed, and the elevator fell to the ground. Appellant suffered several compression fractures of his vertebrae and other special and general damages. He filed a complaint against Emswiler on January 14, 1985, and submitted a claim to the division on July 10, 1985. After the claim was rejected by the division, appellant amended his complaint by adding both the division and the manufacturer, Dutton-Lainson Company, as defendants.

The division filed a motion to dismiss on October 3, 1985, on grounds that the claim was barred by the Claims Act. The district court agreed and ordered a dismissal with prejudice on December 16. The court certified, under Rule 54(b), W.R.C.P., that there was no just cause for delay, so the dismissal became immediately appealable even though all the claims had not been adjudicated.

Appellant contends that the Claims Act does not bar his action against the division because the health care provider exception of § 1–39–110, W.S.1977, Cum.Supp.1985, applies. In the alternative, he argues that the Claims Act violates Art. 1, § 8 and Art. 10, § 4 of the Wyoming Constitution as well as the equal protection and due process clauses of the Fourteenth Amendment to the United States Constitution.

## THE GOVERNMENTAL CLAIMS ACT

The parties agree that unless one of the exceptions to the Governmental Claims Act applies, this action against the State is barred by § 1–39–104(a), W.S.1977, Cum. Supp.1985, which provides in part:

"A governmental entity and its public employees while acting within the scope of duties are granted immunity from liability for any tort except as provided by W.S. 1–39–105 through 1–39–112."

The only exception argued by appellant is found in § 1–39–110, supra, which states:

"A governmental entity is liable for damages resulting from bodily injury, wrongful death or property damage caused by the negligence of health care providers who are employees of the governmental entity while acting within the scope of their duties."

The plaintiff's claim can withstand a motion to dismiss under this exception only if, under the plaintiff's allegations: (1) the division employees who caused his harm were health care providers; and (2) they were acting within the scope of their duties when they caused it.

Under the broad definition of "scope of duties" found in § 1–39–103(a)(iv), W.S. 1977, Cum.Supp.1985, an employee acts within the scope of his duties when he performs

"*any* duties which a governmental entity requests, requires or authorizes a public employee to perform * * *."

The division personnel were authorized by their employer to purchase and inspect the elevator and were, therefore, acting within the scope of their duties.

The critical question presented for our determination is whether, under § 1–39–110, supra, the employees who allegedly caused appellant's harm were health care providers. Normally, a plaintiff should name the particular governmental employees in his complaint so that the court can determine whether they were health care providers. See Comment, Wyoming's Governmental Claims Act: Sovereign Immunity with Exceptions—A Statutory Analysis, 15 Land & Water L.Rev. 619, 631 (1980). But appellant has not done so. Throughout his claim, he consistently directs his allegations to the "State of Wyoming," by which he means the division. Specific employees are mentioned in only two places in the amended complaint; and, even then, the references are too vague to identify them as health care providers.[1]

---

1. Appellant's two references to employees are: "Defendant, State of Wyoming, personnel insisted that the amount of money for an elevator to be installed by Otis Elevator Company or Montgomery Elevator Company would be too great to provide such an elevator due to budget limitations."

Appellant contends that the division's general responsibility is health care; and, therefore, all of its employees must be classified as health care providers regardless of whether they were providing health care at the time of the incident causing his harm. We cannot accept this argument. Section 1–39–110, supra, does not focus on the general roles of agencies, departments, divisions or other subdivisions of the State. By its terms, the exception focuses upon the *employees*. They are the ones who must be health care providers for the exception to apply, and that is true even though the State may be vicariously liable for the acts of its employees.

Appellant's second argument is that the particular division employees, whoever they were, acted as health care providers when they arranged for his elevator; and, because they *acted* as health care providers, they *were* health care providers for purposes of the statutory exception. We agree with appellant's logic, but we must examine the correctness of the premise before we can accept the conclusion. We must ascertain whether the division employees acted as health care providers when they supervised the purchase of the elevator.

The term health care provider is not defined in the definition section of the Governmental Claims Act, § 1–39–103, W.S. 1977, Cum.Supp.1985, and we are faced with a challenge similar to the one that confronted us in *Hurst v. State*, Wyo., 698 P.2d 1130 (1985). In that case, we had to interpret the term "law enforcement officer" as used in § 1–39–112, W.S.1977, Cum. Supp.1985, without the benefit of a statutory definition. We started our analysis with the proposition that

"[i]f possible, words contained in a statute must be given their plain and ordinary meaning." Id. at 1132. See also *State v. Stovall*, Wyo., 648 P.2d 543, 544 (1982).

Appellant contends in his brief that the term health care provider is ambiguous, but he has not offered any statutory provisions in the Claims Act which give it two possible meanings. In fact, there is no reason why the plain and ordinary dictionary meaning of the term is impossible to apply. According to Webster's Third New International Dictionary (1981), the noun "care" means "responsibility for or attention to safety and wellbeing." When used as an adjective, "health" means "of, relating to, or engaged in welfare work directed to the cure and prevention of disease." "Disease" is defined as

"an impairment of the normal state of the living animal or plant body or of any of its components that interrupts or modifies the performance of the vital functions, being a response to environmental factors, * * * to specific infective agents, * * * to inherent defects of the organism, * * * or to combinations of these factors."

Summarizing and combining these ordinary definitions, a health care provider is one who cures or prevents impairments of the normal state of the body.

When the division employees financed and inspected the elevator, they were not attempting to cure or prevent appellant's multiple sclerosis. They were merely providing a means of transportation which enabled him to work despite the disease. Appellant argues that by allowing him to work, the elevator combatted his feelings of uselessness and thereby became a crucial part of his health care program. But this argument proves too much. Under this analysis, any kind of vocational training, business loan, or other governmental largess given an unemployed person with a partially debilitating disease would be classified as health care because it would improve his mental outlook.

Appellant argues that this almost unlimited interpretation of the term health care provider would further the required liberal

"Before payment on the project, which was by State Voucher, dated March 15, 1982, the State of Wyoming, through a representative of the Division of Vocational Rehabilitation, inspected and used the elevator."

construction of the Claims Act. But we think his construction would go much further than the legislature anticipated.

"Although this act should be liberally construed, ' * * * a liberal construction does not require that words be accorded a forced, strained, or unnatural meaning, or warrant an extension of the statute to the suppression of supposed evils or the effectuation of conjectural objects and purposes not referred to, nor indicated in any of the terms used.' Crawford, Construction of Statutes § 238 at 451–452 (1940)." *Hurst v. State*, supra, 698 P.2d at 1133; see also *Thomson v. Wyoming In-Stream Flow Committee*, Wyo., 651 P.2d 778 (1982).

■ The natural, unforced meaning of the term health care provider is evidenced by the legislature's definition of the similar phrase "providers of health care" in § 35–2–202(b), W.S.1977, Cum.Supp.1985, of the New Institutional Health Services Act:

"As used in W.S. 35–2–203, 'provider of health care' means a direct provider including a physician, dentist, nurse, podiatrist, optometrist, physician assistant or other physician supervised personnel, an individual primarily responsible for the administration of a health care facility or a person holding a fiduciary position in or receiving more than twenty percent (20%) of his annual income from:

"(i) Fees or other compensation from research or instruction in the provision of health care;

"(ii) Issuing individual or group health insurance policies or contracts or hospital or medical service benefits;

"(iii) Entities providing health care or related research or instruction; or

"(iv) Entities producing drugs or other articles for individuals or entities providing health care or research in the provision of health care."

While this definition is not necessarily dispositive, it does tend to support the definition of the term health care provider that we have recognized above. If there is a distinction, the term health care provider, as used in the Claims Act, is narrower than the term, "provider of health care," as used in the New Institutional Health Services Act. A health care provider under the Claims Act is an employee, not an agency or institution, and is probably no more than the "direct provider" referred to at the beginning of § 35–2–202(b), W.S.1977, Cum.Supp.1985. In any event, the division employees were not providing health care to appellant under either definition and were not health care providers. The exception of § 1–39–110, supra, does not apply to appellant's action; and it is, therefore, barred by the Governmental Claims Act unless that entire act is unconstitutional.

## THE WYOMING CONSTITUTION

*Article 1, Section 8*

Appellant contends that the Claims Act violates Art. 1, § 8 of the Wyoming Constitution which states:

"All courts shall be open and every person for an injury done to person, reputation or property shall have justice administered without sale, denial or delay. Suits may be brought against the state in such manner and in such courts as the legislature may by law direct."

Under appellant's interpretation, this constitutional provision guarantees the right to sue the State subject only to certain procedural limitations. This same interpretation was put forth by Justice Rose in his dissent in *Worthington v. State*, Wyo., 598 P.2d 796, 809–812 (1979), where he stated:

"I would * * * hold that Article 1, Section 8, clearly implies a restriction on the legislature's power to modify the State's amenability to sue, and that any legislation which goes beyond procedures or venue is illegitimate legislation." Id. at 812.

■ A majority of this court carefully considered Justice Rose's position and rejected it. After analyzing the cases in which other state courts construed similar constitutional provisions, Justice Guthrie, writing for the majority, concluded that

"[t]he constitutional provision here considered can hardly be construed as any-

thing but a delegation to the legislature of the power to regulate the entire field and not an invitation to the courts to invade that domain." *Id. at 804.*

Appellant has not raised any new points or authorities which were not considered in the majority's analysis in Worthington v. State, *supra,* and we decline to overrule that decision. The Claims Act does not violate Art. 1, § 8 of the Wyoming Constitution.

*Article 10, Section 4*

■ Appellant also argues that the Claims Act violates Art. 10, § 4 of the Wyoming Constitution which provides:

*"No law shall be enacted limiting the amount of damages to be recovered for causing the injury or death of any person.* Any contract or agreement with any employee waiving any right to recover damages for causing the death or injury of any employee shall be void. As to all extra hazardous employments the legislature shall provide by law for the accumulation and maintenance of a fund or funds out of which shall be paid compensation as may be fixed by law according to proper classifications to each person injured in such employment or to the dependent families of such as die as the result of such injuries, except in case of injuries due solely to the culpable negligence of the injured employee. Such fund or funds shall be accumulated, paid into the state treasury and maintained in such manner as may be provided by law. The right of each employee to compensation from such fund shall be in lieu of and shall take the place of any and all rights of action against any employer contributing as required by law to such fund in favor of any person or persons by reason of any such injuries or death." (Emphasis added.)

According to appellant, the elimination of his cause of action amounts to a limitation on his damages because, if there is no cause of action, no damages will be recoverable. This argument was explicitly rejected in *Meyer v. Kendig,* Wyo., 641 P.2d 1235 (1982), where we held that the legislature's limits on causes of action against co-employees, codified in § 27–12–103(a), W.S.1977, did not violate Art. 10, § 4. We stated:

"The fact that the first sentence of Art. 10, § 4 relates only to the amount of damages is exemplified by the second sentence which pertains to the 'right to recover.' A 'limitation in amount' and a 'right to recover' were regarded as separate issues and treated separately by the framers of the Wyoming Constitution. See Journal and Debate of the Constitutional Convention of the State of Wyoming, pp. 443–454 and 614–616 (1889). The plain language of [the] first sentence and its ordinary meaning reflect its prohibition to be against laws limiting the 'amount of damages.' Section 27–12–103(a) does not do that. This fact is determinative of the constitutionality of [the] section insofar as Art. 10, § 4 of the Wyoming Constitution is concerned. Furthermore, if the first sentence of Art. 10, § 4, were given the broad application urged by appellee, it would conflict with, and would make enactments impermissible on, such subjects as comparable negligence, statutes of limitation, contribution among joint tortfeasors, etc." (Footnote omitted.) *Meyer v. Kendig,* supra, 641 P.2d at 1239.

The reasoning expressed in this quotation is still sound. Art. 10, § 4 may prevent the legislature from imposing arbitrary limits on damages, but it does not prevent limitations on the types of actions which may be brought against the State.

## THE FOURTEENTH AMENDMENT

*Equal Protection*

Appellant claims in his brief that

"[t]he true issue is whether the total denial of any remedy[,] solely because of the identity of the wrongdoer[,] offends the Due Process and Equal Protection guarantees of the 14th Amendment to the United States Constitution * * *."

Appellant has not satisfied his substantial burden of proving the claimed constitutional infirmity.

"When the constitutionality of a statute is assailed, we are governed by the following standards:

" 'Statutes are presumed to be constitutional unless affirmatively shown to be otherwise, and one who would deny the constitutionality of a statute has a heavy burden. The alleged unconstitutionality must be clearly and exactly shown beyond any reasonable doubt.' " *Meyer v. Kendig,* supra, 641 P.2d at 1238 (citing *Stephenson v. Mitchell ex rel. Workmen's Compensation Department,* Wyo., 569 P.2d 95, 97 (1977)).

Appellant provides us with no equal protection analysis. He refers us to a law review article by Professor David Minge and several state court decisions. Professor Minge's analysis is limited to several bald assertions followed by a case citation as follows:

"Tort immunity denies justice, damages private property without compensation or due process of law, and denies persons injured by public wrongs protection equal to that afforded those injured by private wrongs. * * * An intermediate Ohio court recently granted recovery against the state on the basis of the equal protection clause, but neither the Fourteenth Amendment nor the right to justice arguments have been used as a basis of recovery in other jurisdictions." (Footnotes omitted.) D. Minge, Governmental Immunity from Damage Actions in Wyoming, 7 Land & Water L.Rev. 229, 238 (1972).

These assertions are insufficient to show an equal protection violation because

"one who contests the constitutionality of a statute must do more than make bald assertions of what he thinks is discriminatory. The party urging the statute to be unconstitutional must demonstrate that proposition beyond a reasonable doubt." (Citations omitted.) *Phillips v. ABC Builders, Inc.,* Wyo., 611 P.2d 821, 824 (1980).

Moreover, the case cited by Professor Minge is not support for the statement cited because it was overruled by the Ohio Supreme Court which held that the doctrine of sovereign immunity does not violate the equal protection clause. *Krause v. State,* 31 Ohio St.2d 132, 285 N.E.2d 736, 745, appeal dismissed 409 U.S. 1052, 93 S.Ct. 557, 34 L.Ed.2d 506 (1972).

After discussing Professor Minge's article, appellant launches into a discussion of how immunity has been held unconstitutional by various state courts. But only one of the state cases he cites actually involves federal constitutional problems with sovereign immunity.[2] That case, *White v. State,* Mont., 661 P.2d 1272, 1274–1275, 43 A.L.R.4th 1 (1983), constitutes the only cogent argument presented by appellant in support of his equal protection claim.

The Montana statute challenged in *White v. State,* supra, barred a plaintiff from recovering any non-economic damages in a suit against the State, and it limited his recovery of economic damages to $300,000. *White v. State,* supra, 661 P.2d at 1274. According to the supreme court, this statute classified plaintiffs according to the identity of the tortfeasor and discriminated

---

**2.** In one of the cases cited, *Nieting v. Blondell,* 306 Minn. 122, 235 N.W.2d 597, 603 n. 14 (1975), the Minnesota Supreme Court expressly noted:

"We have been urged to declare the doctrine of sovereign immunity to be unconstitutional as a violation of due process or equal protection. However, because of our belief that the legislature will recognize the fairness and wisdom of allowing a wrongfully injured party to be compensated for his injuries, we decline to consider these constitutional questions."

The other inapplicable cases cited by appellant are: *Muskopf v. Corning Hospital District,* 55 Cal.2d 211, 11 Cal.Rptr. 89, 359 P.2d 457 (1961); *Willis v. Dep't of Conservation and Economic Development,* 55 N.J. 534, 264 A.2d 34 (1970); *Mayle v. Pennsylvania Department of Highways,* 479 Pa. 384, 388 A.2d 709, 716–720 (1978); *Pruett v. City of Rosedale,* Miss., 421 So.2d 1046 (1982); *McCall by Andrews v. Batson,* 285 S.C. 243, 329 S.E.2d 741 (1985); *State v. Brosseau,* 124 N.H. 184, 470 A.2d 869 (1983).

against those who happened to sue a governmental tortfeasor. The court decided that because the right infringed (the right to bring a valid cause of action for personal injuries), was fundamental, the classification scheme had to satisfy a compelling state interest. The State's interest in preserving its funds for the benefit of the taxpayers was not compelling, the court concluded, and, therefore, tort plaintiffs should not be treated unequally based on the identity of the defendant.

■ We disagree with the Montana court's unique premise that the right to sue a particular defendant is fundamental. The supreme courts of Alaska and Colorado, to name but two, have held that "the interest in suing a particular party, in this case a governmental entity, is not fundamental." *Wilson v. Municipality of Anchorage,* Alaska, 669 P.2d 569, 572 (1983); see also *Fritz v. Regents of University of Colorado,* 196 Colo. 335, 586 P.2d 23, 25 (1978) (en banc).[3] Without a suspect class or a fundamental right involved, we need only examine the classification to decide whether it is rationally related to a legitimate state objective. *Meyer v. Kendig,* supra, 641 P.2d at 1239 (citing *Washakie County School District Number One v. Herschler,* 606 P.2d 310, 333 (1980)).

The sovereign immunity provided by the Claims Act does not create a classification system wholly unrelated to the purpose of the statute. On the contrary, the distinction it makes between those injured by the State and those injured by private defendants is a distinction based entirely on the statute's purpose of protecting public funds for broad public benefits, certainly a legitimate purpose. See § 1–39–102(a), W.S.1977, Cum.Supp.1985. The two classes of plaintiffs "are not similarly situated and they may be treated differently." *O'Dell v. School District of Independence,* Mo., 521 S.W.2d 403, 409 (1975) (en banc);

*Krause v. State,* supra, 285 N.E.2d 736; *Sousa v. State,* 115 N.H. 340, 341 A.2d 282, 285 (1975).

Sovereign immunity, created by either statute or common law, has been attacked on equal protection grounds in almost every jurisdiction. The State cites 36 cases in its brief where the equal protection challenge has failed, and our research has disclosed at least ten more to the same effect. These courts have consistently held that sovereign immunity has a rational relationship to a legitimate state interest. See, e.g., *Fritz v. Regents of University of Colorado,* supra, 586 P.2d at 25; *Brown v. Wichita State University,* 219 Kan. 2, 547 P.2d 1015, 1025, appeal dismissed 429 U.S. 806, 97 S.Ct. 41, 50 L.Ed.2d 67 (1976). *White v. State,* supra, 661 P.2d 1272, is the only case we have found which reaches the contrary result.

### Due Process

The Montana Supreme Court did not discuss the due process clause of the Fourteenth Amendment in *White v. State,* supra. The only due process argument or authority in appellant's brief consists of the remarks of Professor Minge in his law review article, supra. These cursory remarks are insufficient to discharge the heavy burden imposed on a party attacking the constitutionality of a statute. See *Meyer v. Kendig,* supra, 641 P.2d at 1238. We will not explore the due process argument except to note that the United States Supreme Court has minimized the impact of the due process clause on sovereign immunity in *Martinez v. California,* 444 U.S. 277, 100 S.Ct. 553, 557, 62 L.Ed.2d 481 (1980):

> "[E]ven if one characterizes the immunity defense as a statutory deprivation [of a property interest], it would remain true that the State's interest in fashioning its own rules of tort law is paramount to

---

3. Appellant has not alleged that the Claims Act discriminates against a suspect class, and the Montana court did not mention this possibility in its opinion. Therefore, it is not raised for our review in this case. We note, however, that there are no distinctions in the Claims Act based

on the characteristics of the plaintiffs. The act applies equally to every person who suffers tortious injury at the hands of the State. Therefore, there is no suspect classification that would trigger a search for a compelling state interest.

any discernible federal interest, except perhaps an interest in protecting the individual citizen from state action that is wholly arbitrary or irrational.

"We have no difficulty in accepting California's conclusion that there 'is a rational relationship between the state's purposes and the statute.' "

Affirmed.